OPINION OF THE COURT
Louis C. Benza, J.
This matter was remitted to the Court of Claims for determination of damages on two causes of action (Pike & Son v State of New York, 212 AD2d 963).
Prior to analyzing the damages in the first cause of action, this court notes its perception of what constitutes that part of the record limiting or setting the parameters for such analysis.
The lower court dismissed claimant’s first cause of action based on claimant’s failure of proof that the extra work was done under State directive. "In the present case, while the State did order extra work (meaning the direction that the claimant complete by whatever means necessary holes abutting obstructed holes) what the contractor and its subcontractor did here was not that extra work. Rather, they unilaterally adopted a different methodology to install the drains by preaugering all holes. While this method resulted in some still obstructed drains as well as completed drains, it did not change in any way the basis of payment under which the State contracted. That was a per-linear-foot basis. While we have no doubt that this preaugering method was more expensive for the contractor and the subcontractor, the State was not obligated to pay those costs under those circumstances established at bar” (Ct Cl, Nov. 18, 1993, Margolis, J., claim No. 70979, slip opn, at 10-11).
After dismissing the claimant’s first cause of action on the above-stated basis, Judge Margolis stated in dicta: "In sum, the settlement agreement between claimant and its subcontractor does not provide a separate defense to the defendant for claimant’s first and second causes of action. Nevertheless, defendant is entitled to a judgment dismissing those causes of action” (supra, at 19).
*1039 Although the lower court addressed the State’s contention for dismissal of claimant’s claim for damages sustained by its subcontractor Vibroflotation for failure to prove the existence of a liquidation agreement between claimant and its subcontractor, it never addressed the issue as to whether claimant’s settlement agreement with Vibroflotation limited claimant’s damages for Vibroflotation’s extra work costs to restitution of the amount paid in the settlement agreement. Although the Appellate Division reversed the lower court and found liability against the State on the first cause of action, and found to be without merit the State’s contention that the failure of a liquidation agreement barred claimant from recovery, the decision did not address the above-stated issue as to whether claimant’s recovery is limited to restitution based on the general release.
Absent any other theory of recovery recognized in law, claimant, in its action against defendant for losses sustained by Vibroflotation, is limited, upon proof at trial, to its out-of-pocket costs as established by the settlement agreement entered into evidence by claimant as exhibit 66 (First Natl. Bank v Fourth Natl. Bank, 77 NY 320, 328; City of New York v Selden, 255 F 317, 319).
The record clearly establishes that claimant is not suing defendant on behalf of Vibroflotation. Any recovery here benefits claimant and does not flow through it to the benefit of Vibroflotation. In this respect, the present case differs from the usual procedure adopted by principal contractors in obtaining damages for subcontractors resulting from extra work orders by owners (see, Ardsley Constr. Co. v Port of N. Y. Auth., 61 AD2d 953, 954 [1st Dept 1978]; Lambert Houses Redevelopment Co. v HRH Equity Corp., 117 AD2d 227, 230-231 [1st Dept 1986]; Fehlhaber Corp. & Horn Constr. Co. v State of New York, 69 AD2d 362, 370-371). Absent any liquidation agreement to bridge the gap in privity between subcontractors and owners (Lambert Houses Redevelopment Co. v HRH Equity Corp., supra, at 227-231), claimant cannot pursue Vibroflotation’s unliquidated damages for extra work against the defendant (City of New York v Selden, 255 F 317, supra; Ardsley Constr. Co. v Port of N. Y. Auth., 61 AD2d 953, supra). City of New York v Selden (supra, at 319) did recognize the right of the principal contractor to pursue the owner for subcontractor losses which were recognized and paid for by the principal contractor (Mars Assocs. v New York City Educ. Constr. Fund, 126 AD2d 178, 191, lv dismissed 70 NY2d 747; Degnon Contr. Co. v City of New York, 235 NY 481, 487).
*1040 In the instant case, claimant and Vibroflotation entered into an agreement to settle a lawsuit brought in the State Supreme Court by Vibroflotation against claimant for losses sustained by Vibroflotation under its subcontract. All of Vibroflotation’s claims were settled for $75,000. As part of the agreement, Vibroflotation assigned all claims arising from the contract to claimant. The agreement reads in pertinent part as follows: "4. Effective upon the payment referred to in Paragraph 1 of this Settlement Agreement, Vibroflotation hereby assigns, sells, and transfers to Pike without warranty, representation or recourse all of Vibroflotation’s rights and interests in and to any and all claims arising from the Project, asserted or unasserted, including all claims arising out of drilling in the area of the Project’s North Abutment, all claims arising out of drilling in the area of the Project’s South Abutment, and all claims arising out of the quantity of material installed. Vibroflotation agrees to cooperate with Pike and to make its files and personnel available to Pike to support Pike’s preparation and presentation of such claims against the State. Such availability will be upon reasonable notice and during customary business hours, and Pike shall reimburse Vibroflotation for its out-of-pocket costs incurred in connection therewith, including but not limited to, telephone, copying, postage, travel and hotel charges, plus a reasonable witness fee.” (Exhibit 66.)
If claimant contends that this agreement somehow increases its damages beyond the $75,000 paid to Vibroflotation, that contention must fail as Vibroflotation, lacking privity, had no rights against defendant which it could assign to claimant (see, Fehlhaber Corp. & Horn Constr. Co. v State of New York, supra; Dunn v Uvalde Asphalt Paving Co., 175 NY 214). The claimant, through this agreement, has for all purposes established its loss as a result of defendant’s breach to $75,000 for all causes of action regarding extra work performed by Vibroflotation. Simply stated, claimant limited its losses to Vibroflotation to $75,000 and claimant limited its recovery from the State to that same amount (see, First Natl. Bank v Fourth Natl. Bank, 77 NY 320, supra). "It would seem to be axiomatic that a suitor cannot recover damages for breach of a contract unless he has suffered them” (Degnon Contr. Co. v City of New York, 235 NY, supra, at 486). It appears at first blush that an iniquity is perpetuated when the principal contractor’s right to pursue the subcontractor’s loss against the owner is limited to its out-of-pocket expenses because of the nature of the agreement between the two, but the anomaly disappears when *1041 viewed under the scrutiny of the rationale of Degnon (supra), which recognized the nature of human relationships that authored the proverb "A bird in hand is worth two in the bush”. "We assume that some arrangement might have been made between the plaintiff and its subcontractor which would have made the former liable over to the latter for any increased cost and responsible for the enforcement against the city for the benefit of its subcontractor of any liability arising through breach of contract. It is, however, sufficient to answer this suggestion simply by saying that no such obligation was undertaken and the many authorities which are cited which might sustain it if it had been assumed are not applicable” (supra, at 487). Although this holding bars claimant from recovering any more than its out-of-pocket expenses of $75,000 for all of Vibroflotation’s extra work, this court, in the interest of judicial economy, will view claimant’s proof on damages for the first cause of action before applying the limitations found.
Claimant contends that its damages for the costs incurred as a result of its pre-drilling procedure not only include the cost of the pre-drilling but also the cost of the downtime of its machine, which placed the wick drains in the pre-drilled holes (labeled by claimant as loss of productivity). This downtime was caused by underground obstructions falling into the predrilled holes, clogging or damaging Vibroflotation’s equipment. The Appellate Division’s decision on this issue stated that "[b]y his 'written change order’, the State engineer directed claimant to complete, by whatever means necessary, its attempts to install drains next to obstructed holes. Because experience had demonstrated the futility of not pre-drilling the holes, the subcontractor acted reasonably in determining to pre-drill the holes on the first attempt. We conclude that the subcontractor’s resort to the necessary and feasible method, sooner rather than later, was expressly or impliedly authorized by the State and thus constituted compensable extra work under the contract” (Pike & Son v State of New York, 212 AD2d 963, 964, supra).
 The extra work required as a result of the change order was found by the Appellate Division to have been incurred through the contractor’s compliance with the State’s engineer’s directive to complete by whatever means necessary drains next to obstructed holes. In compliance with this directive, the claimant undertook to pre-drill all holes before attempting to place the wick drains. Additional costs were incurred because of the problems encountered in the actual placement of the *1042 drains in the pre-drilled holes by the Alidrain. Absent any finding of misrepresentation of soil condition by the State, all costs incurred for placing the drains other than the cost to predrill holes are included as part of claimant’s contract cost for completing the contract work (Savin Bros, v State of New York, 62 AD2d 511, 516; Pike & Son v State of New York, Ct Cl, Nov. 18, 1993, Margolis, J., claim No. 70979, slip opn, at 17-19, mod 212 AD2d 963, supra). Claimant, therefore, is not entitled to damages for costs attributed to what claimant labels in attachments D and E of exhibit 45* as productivity damages. As to the three alternate damage schedules submitted by claimant for extra costs due to the pre-drilling operation, the court adopts exhibit 147 — which consists of the daily force account records maintained by the State in itemizing the daily labor hours and costs and the daily equipment usage based on actual operation and blue book costs for equipment — as more closely adhering to section 109-05 of the contract proposal — dealing with calculating the costs associated with extra and force account work — than the other methods submitted by claimant.
Although the damage schedule summary of exhibit 147 shows an application of 20% as profit and overhead and labor, the actual arithmetic establishes that the computation for these costs was actually 25%, in compliance with the contract. For the first cause of action, the court finds damages in the amount of $78,087.76. As the court has found that the maximum amount of damages to which claimant is entitled on behalf of losses sustained by Vibroflotation is $75,000, that amount is reduced to $68,061.87 ($75,000 —$6,938.13 awarded claimant in the third cause of action).

 The damage schedule stated in exhibit 45 is based primarily on estimated costs calculated by Vibroflotation in preparing its bid. This methodology for calculating excess costs has previously been rejected by the courts of this State as being unreliable (Novak & Co. v Facilities Dev. Corp., 116 AD2d 891-892).