■ MYRON G. BUTLER et al., Appellants, v NEW YORK STATE OLYMPIC REGIONAL DEVELOPMENT AUTHORITY, Respondent. [763 NYS2d 162] —Spain, J. Appeal from a judgment of the Court of Claims (Collins, J.), entered August 28, 2002, upon a decision of the court in favor of defendant.

Following a March 1998 skiing accident at Gore Mountain Ski Center owned and operated by defendant, claimant Myron G. Butler (hereinafter claimant) and his wife, derivatively, commenced this action alleging that defendant's employees were negligent in rendering first aid to him after the accident, thereby causing or exacerbating his injuries. On a prior appeal, this Court ruled that, following a nonjury trial, the Court of Claims should not have granted defendant's motion to dismiss the claim at the close of proof because, viewed most favorably to claimants, the evidence made out a prima facie case for the factfinder that defendant's negligence proximately caused or contributed to his injuries (292 AD2d 748 [2002]).

Upon remittal, the Court of Claims, acting as the factfinder, found in defendant's favor concluding, in an extensive written decision, that claimants' proof failed to establish that defendant's negligence proximately caused any aspect of claimant's injuries. Specifically, the court found that defendant's ski patrollers did not unduly delay the task of treating claimant on the mountain and transporting him to the base first aid station, and did not negligently apply a splint to his shoulder. Also, the court concluded that while the failure of defendant's employees to summon an ambulance upon diagnosing the probable dislocated shoulder constituted a breach of their duty of providing reasonable first aid care, the medical proof failed to demonstrate that the approximately 27- to 32-minute delay in securing required emergency medical care at the hospital—attributable to the use of a private vehicle rather than an ambulance—was a competent producing cause of any aspect of claimant's injuries. Claimants appeal, challenging the court's factual findings and judgment in favor of defendant. We affirm.

In independently reviewing the probative weight of the evidence and inferences to be drawn from it in this nonjury trial case, we accord deference to those findings of the Court of Claims which are based largely upon credibility determinations and concur in its factual findings, which fully comport with a fair and reasonable interpretation of the evidence (see *Shawangunk Conservancy v Fink*, 305 AD2d 902, 903-904 [2003]; *Burton v State of New York*, 283 AD2d 875, 877 [2001]). The central factual issue at trial was whether the negligence of defendant's employees in the aftermath of claimant's skiing accident, if any, proximately caused in whole or in part claimant's injuries. The testimony established that claimant's accident—in which he sustained a dislocated shoulder causing neurovascular compromise—occurred at approximately 12:15 P.M. and that, after receiving first aid and a

splint was applied at the scene, he was transported off the mountain and taken by private vehicle to the closest hospital, arriving at about 2:07 P.M.; his dislocated shoulder was immediately reduced, allowing resumption of vascular function, but claimant had sustained extensive, apparently permanent nerve damage in his left arm. The time it took to get claimant to the hospital was significant because the medical testimony established that irreversible nerve damage occurs within approximately one hour of constriction of the blood flow to the nerves, which the dislocation caused.

Claimants alleged that defendant's employees were negligent in unduly delaying his care at the scene and transport to the base first aid station. However, the testimony established that it took defendant's responding ski patrol only 30 to 35 minutes to assess claimant's injuries, await necessary supplies, splint his arm and shoulder and transport him via toboggan to the base station (292 AD2d 748, 750-751 [2002], *supra*). The Court of Claims' determination to not credit the generic testimony of claimant's ski safety expert that the care and transport should have taken no more than 10 to 15 minutes—the only testimony supporting this undue delay claim—was eminently reasonable, premised as it was on the expert's minimal experience in providing first aid treatment and the conclusory and insufficiently specific nature of his opinion (*see Jump v Jump*, 268 AD2d 709, 710 [2000]).

Next, we agree with the finding of the Court of Claims that the proof adduced at trial was inadequate to demonstrate that the 27- to 32-minute delay attributable to defendant's employees' failure to summon an ambulance to transport claimant to a site of definitive care was a substantial factor in causing or contributing to his injuries (*see Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980]; *Murray v New York City Hous. Auth.*, 269 AD2d 288, 289 [2000]). That is, according to the credible testimony, even had defendant's employees summoned an ambulance shortly after the 12:15 P.M. accident, it could not have left the base first aid station with claimant until 1:00 P.M., arriving at the hospital—at the earliest conceivable moment—around 1:35 to 1:40 P.M., or one hour and 20 to 25 minutes after the accident. The undisputed consensus among the testifying medical experts, including claimant's treating neurologist, is that the critical time period in issue was one hour, in which claimant needed to get to the hospital in order to have his shoulder reduced and the blood supply to his arm restored to prevent irreversible nerve death, and the evidence demonstrates that even an ambulance could not have ac-

complished that (*see* 292 AD2d, at 753, *supra*). While claimant's neurologist opined, theoretically, that the outside limit of the critical time might be as much as 1½ hours and concurred that the injury was progressive during the critical period of interrupted blood supply to the nerves, he clearly testified that "by the end of an hour * * * there will be nerve damage * * * [and] the ability of the nerve to recover from that injury is very low * * * [as] the loss of supply of nutrients and oxygen to the nerve becomes critical by the end of an hour." None of the medical testimony established what percent, aspect or degree of claimant's resulting injuries—if any—could even theoretically be attributable to this delay in the reduction of his dislocation, which was performed at 2:07 P.M. rather than at the potential time of 1:35 to 1:40 P.M. if transported via ambulance. Thus, we fully concur in the court's finding that "[t]he proof offered would leave the Court to speculate what, if any, part of the claimant's injuries are attributable to the negligence of [defendant]."

Finally, also supported by the weight of probative evidence is the Court of Claims' finding that defendant did not negligently apply or fail to remove the split and that the shoulder dislocation, rather than the splint, caused claimant's neurovascular injuries. Thus, upon our own independent review of the record, we find no basis upon which to disagree with the court's findings, which are based upon a fair and reasonable interpretation of the facts, or with its ultimate determination that claimants failed to establish that defendant's negligence was a contributing proximate cause of claimant's injuries (*see Glencoe Leather Corp. v Parillo*, 285 AD2d 891, 892 [2001]; *Burton v State of New York, supra* at 877).

Cardona, P.J., Carpinello, Mugglin and Kane, JJ., concur. Ordered that the judgment is affirmed, without costs.