■ HARRISON & BURROWES BRIDGE CONSTRUCTORS, INC., Respondent, v STATE OF NEW YORK, Appellant. [839 NYS2d 854]—

Kane, J. Appeal from a judgment of the Court of Claims (Lebous, J.), entered May 5, 2006, upon a decision of the court in favor of claimant.

Claimant and defendant entered into a contract for claimant to rehabilitate and resurface eight bridges along State Route 17 in Delaware County. After the final payments were made, claimant disputed defendant's refusal to pay for certain items and commenced this action seeking additional compensation. Following trial, the Court of Claims awarded claimant a judgment of $174,730.39 plus interest. Defendant appeals.

Under the contract, defendant was required to pay claimant for the total number of tubular markers* installed, including those which replaced markers damaged by traffic. If an agreement is clear, complete and unambiguous, the contract should be enforced according to its terms, reading the document as a whole to put the words and phrases in proper focus (*see South Rd. Assoc., LLC v International Bus. Machs. Corp.*, 4 NY3d 272, 277 [2005]). In general, "the express terms of a unit price contract govern the parties' rights and obligations" (*D.A. Elia Constr. Corp. v New York State Thruway Auth.*, 289 AD2d 665, 666 [2001]; *see e.g. Waltech Constr. Corp. v Town of Thompson*, 237 AD2d 716, 717 [1997] [stating that agreed-upon unit price must be paid even if final amount is considerably in excess of estimates]). The bid proposal here called for 868 tubular markers, but due to the excessive damage of markers by traffic, claimant installed an additional 1,478. Claimant contended that it was entitled to be paid for every tubular marker it installed, including those used to replace damaged markers.

Several contract subsections address tubular markers. The markers were bid on a per-unit basis, "measured as the number of tubular markers furnished and installed to the satisfaction of the Engineer." The initial subsection concerning these markers directs that "[t]ubular markers damaged by [claimant's] operation or by traffic shall be replaced within 24 hours or as directed

---

* A tubular marker is an orange plastic tube several feet high, adorned with reflective sheeting, which is used to temporarily reroute traffic during construction.

by the Engineer," without addressing who bears the cost of replacing those markers. The paragraph on tubular markers under the subsection entitled "basis of payment" states that "[t]he unit price bid for tubular markers shall include the cost of furnishing all labor, materials, equipment, and all incidentals necessary to complete the work . . . . The unit price bid shall include the cost of replacing damaged reflective sheeting. The cost to remove and reset tubular markers due to contractor error shall be borne by [claimant]. Removal at the completion of the work or when no longer needed shall also be included in the unit bid price." This provision does not require a bidding contractor to include in its unit price bid the cost of replacing tubular markers damaged by traffic. Nor does any other provision in the contract. Reading these contract provisions together, the unit price bid did not call for a mark up for tubular markers installed to replace those damaged by traffic, claimant was required to replace markers damaged by traffic and defendant was required to pay claimant for each marker claimant installed, save those improperly installed or damaged due to contractor error. Accordingly, the Court of Claims correctly ordered defendant to pay claimant for each tubular marker installed in place of one damaged by traffic. While defendant contends that the contract's damages provision bars payment, that section is inapplicable here. Claimant is seeking payment under the terms of the contract, not compensation "for damage to any phase of the work" as covered by the damages provision.

The Court of Claims properly awarded claimant its actual cost of performing the deleted painting items. The original contract included items for cleaning, priming and painting all eight bridges. Due to statewide concerns about potential health hazards associated with lead paint being released into the air, defendant began researching new policies on lead paint removal from bridges. While research and investigation ensued, defendant deleted painting and paint-removal items from pending contracts, including the one at issue here. The parties agree that defendant had the right to delete these items. When defendant informed claimant of the new precautions necessary in the paint-removal process, claimant's subcontractor withdrew. The parties did not reach an agreement on a new price for the paint-removal and painting items, so these items were performed as force account work. Accordingly, claimant was entitled to be paid under the force account provisions of the contract, including the addition of a 20% profit margin (*see John B. Pike & Son v State of New York,* 169 Misc 2d 1037, 1042 [1996]). Defendant cannot expect to pay the amount originally bid for items it deleted from the contract and then reintroduced as separate items.

Defendant was not required to reimburse claimant for the extra costs associated with curing the cement in cold weather. Subject to exceptions not raised here, courts recognize as valid and enforceable contract clauses exculpating the contractee from liability to the contractor for damages resulting from delays in performance of the contract work (*see Corinno Civetta Constr. Corp. v City of New York*, 67 NY2d 297, 309 [1986]; *Clifford R. Gray, Inc. v City School Dist. of Albany*, 277 AD2d 843, 844 [2000]). "Because the exculpatory clause is specifically designed to protect the contractee from claims for delay damages resulting from its failure of performance in ordinary, garden variety ways, delay damages may be recovered in a breach of contract action only for the breach of a fundamental, affirmative obligation the agreement expressly imposes on the contractee" (*Corinno Civetta Constr. Corp. v City of New York, supra* at 313). The clause here precluded claimant from making claims for extra costs attributable to delays occasioned by defendant, specifically including delays in reviewing shop drawings. Although the Court of Claims found that defendant's delay in reviewing shop drawings delayed the entire project, requiring claimant to comply with cold weather curing procedures, the delay clause limited claimant's remedy to requesting an extension of time. While claimant attempts to cast its argument as one to recover for extra work, not merely a delay, the claim boils down to damages caused by defendant's delay, and are thus barred by the contract (*see id.* at 313-314).

The Court of Claims did not err in finding that claimant was entitled to be paid for repairing damaged concrete. The parties have different theories as to why the concrete on one bridge did not properly cure, causing damage which claimant was required to repair. Giving deference to the court's credibility determinations (*see Martin v State of New York*, 39 AD3d 905, 907 [2007]; *Butler v New York State Olympic Regional Dev. Auth.*, 307 AD2d 694, 695 [2003]), we cannot say that the court erred in accepting claimant's theory that claimant complied with the contract specifications and the concrete did not cure properly as a result of the method insisted upon by defendant.

Cardona, P.J., Peters, Spain and Carpinello, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as awarded claimant $21,109.73 plus interest for additional costs related to cold weather protections, and, as so modified, affirmed.