OPINION OF THE COURT
Shlomo S. Hagler, J.
Petitioner Chelsmore Apts., L. L. C. (Chelsmore or petitioner) *543 commenced this holdover proceeding to recover possession of rent-controlled apartment B located at 205 West 15th Street, New York, New York (subject premises), on the ground that the respondents do not occupy the subject premises as their primary residence. Respondents Lillian N. Medina, Rafael Garcia and Carlos Herreros (Medina, Garcia, Herreros, or respondents) interposed a joint written answer asserting, inter alia, that Medina and Garcia occupy the subject premises as their primary residence; and Herreros would be entitled to succession rights, if any.
Trial
This proceeding was referred to this court for trial. The trial commenced on May 7, 2001 and continued over the course of 16 days until this matter was marked submitted on October 5, 2001.
Issues
(1) Do respondents primarily reside at the subject premises or at alternate addresses located in the “Alicante region of Spain and/or 1596 Farnsworth Avenue, Malabar, FL 32901 and/or 4149 Bayberry Drive, Melbourne, FL 32901 and/or 1000 River Road, Teaneck, NJ 07666”? See “Thirty (30) Day Notice of Termination and Notice of Intention to Commence a Proceeding to Recover Possession Based Upon Non-Primary Residence” dated February 25, 2000; and
(2) Do respondents “underutilize” the subject premises by virtue of their constant travel for both professional and personal reasons?
Burden of Proof
A landlord may recover a rent-controlled apartment which is “not occupied by the tenant, not including subtenants or occupants, as his [or her] primary residence, as determined by a court of competent jurisdiction.” (See 9 NYCRR 2200.2 [f] [18].) Primary residence has been defined as an “ongoing, substantial, physical nexus with the controlled premises for actual living purposes — which can be demonstrated by objective, empirical evidence.” (See Emay Props. Corp. v Norton, 136 Misc 2d 127, 129 [App Term, 1st Dept 1987]; see also, Sommer v Ann Turkel, Inc., 137 Misc 2d 7, 10 [App Term, 1st Dept 1987]; Berwick Land Corp. v Mucelli, 249 AD2d 18 [1st Dept 1998].)
While the above definition is broadly worded, courts have delineated several specific factors in determining primary *544 residence. These factors include, but are not limited to: (1) the address listed by the tenant on any tax return, driver’s license, motor vehicle registration or other document filed with a public agency; (2) the tenant’s voter registration; and (3) the amount of time the tenant occupies the rent-regulated apartment. (See Village Dev. Assocs. v Walker, 282 AD2d 369 [1st Dept 2001]; Pendias v 3 E. 69th St. Assocs., 119 AD2d 467, 469 [1st Dept 1986].) No single factor is determinative of the issue of primary residence. Recently, the above factors were codified under 9 NYCRR 2200.3 (j).
Findings of Facts
Lillian N. Medina and Rafael Garcia are the rent-controlled tenants of record of the subject premises for approximately 40 years. Medina is 67 years old and Garcia is 80 years old.
Medina and Garcia are married, but have lived separate and apart for more than 10 years. Notwithstanding their separation, they still maintain a “friendly” relationship with each other. Both also enjoy a deep and abiding relationship with their son, Carlos Herreros. They clearly interact as a family unit for the mutual benefit of their adult son. Medina’s daughter, Emi, died of a cerebral hemorrhage while away at college in 1992.
Medina and Garcia were employed as chief stewards in the Merchant Marines. They are hardworking individuals with a collective experience of almost a century of service. Their employment requires them to be at sea on merchant vessels for extended periods of time. Herreros’ employment at Spirit Airlines also requires extensive travel.
Garcia stipulated that he primarily resides in Alicante, Spain. Medina and Herreros declared that the subject premises is their “home” and primary residence. Medina credibly testir fled that the bulk of her clothing and personal belongings are located in the subject premises.
Herreros resided at 4149 Bayberry Drive, Melbourne, Florida (Melbourne Residence) from September 1994 through May 1998. Both Medina and Herreros’ names appeared on the lease of the Melbourne Residence and the security, deposit was subsequently refunded to them. The Melbourne Residence was never Medina’s primary residence, but constituted a residence for her son alone.
In November 1998, respondents purchased two houses at 1590 and 1596 Farnsworth Avenue in Malabar, Florida (Malabar Properties). The houses are adjacent to one another and *545 share a common driveway. The house located at 1590 Farnsworth Avenue has three bedrooms and the one at 1596 Farnsworth Avenue contains five bedrooms. Although respondents each reserved a bedroom in the 1596 Farnsworth Avenue property, the Malibar Properties are utilized primarily by Medina and Garcia for investment purposes. The room that Medina reserved is also used as a memorial for her deceased daughter.
Herreros claimed that the Malibar Properties were leased, in part, to his co-workers, Leon Wilde and Heather Richardson. According to Dennis Ryan, a forensic handwriting expert, the purported leases bear no resemblance to the known signatures of Wilde and Richardson. Ryan did not shed light on the individual(s) who may have signed on behalf of Wilde and Richardson. In any event, Herreros never claimed that he had seen the execution of the leases, but the same had been left for him in his mailbox at Spirit Airlines.
Notwithstanding the above, Herreros testified that the Mali-bar Properties were utilized as a “crash pad” or rented on a temporary basis to various employees at Spirit Airlines. Herreros began renting rooms at the Malibar Properties in the end of December 1998, or in the beginning of January 1999, to about 8 to 12 people over the course of approximately 14 months. His testimony was buttressed by the credible testimony of two former renters and co-workers, Tammy Lindblom (Lindblom) and James Boyd Curtis (Curtis).
Lindblom credibly testified that she learned of the rental at 1590 Melbourne Avenue from an advertisement posted at the Melbourne, Florida, station of Spirit Airlines. She then contacted Leon Wilde and rented a bedroom from him in January 1999 for $300 per month which she always paid in cash. Lindblom utilized the bedroom as her “crash pad” for six or seven months. She observed that “people were always coming and going” at the Malibar Properties. Lindblom recounted at least six renters by name. She also credibly testified that she always saw Herreros, but not Medina, at the Malibar Properties.
Curtis also supported Lindblom’s and Herreros’ assertion that the Malibar Properties were utilized as a “crash pad.” While Curtis was clearly mistaken regarding the date when he moved into the Malibar Properties, he nonetheless reiterated the prior credible and consistent testimony that Leon Wilde, Heather Richardson, Tammy Lindblom, Leon Baumgarten, John Scenowitch, Jay Carnevale and Dave Grubb rented rooms at the Malibar Properties. Curtis clearly testified he also paid *546 $300 per month for a bedroom to Leon Wilde, “who was in charge of the property.” Curtis described Medina as a mere visitor who occasionally stayed at 1596 Farnsworth Avenue property for a few days to a few weeks.
Medina listed the subject premises on every tax return except for the 1997 United States individual tax return wherein she listed the Melbourne Residence. Medina’s purported 1997 tax return filing appears to be an aberration “[t]he consequence of such filing is a matter for the tax authorities, not this Court.” (See Village Dev. Assocs. v Walker, supra, at 369.) She also listed the subject premises on her New York City Board of Election records, but voted by absentee ballot in 1998 and 1999. Medina listed P.O. Box 364, New York, New York, on her bank and credit card accounts as well as on her employment records. Medina testified that she retrieves her mail from the post office located only a few blocks from the subject premises between 18th Street and 7th Avenue. She further testified that she has maintained this P.O. Box for many years because she was not satisfied with the mail delivery and security at the subject building.
Charles Murr, the pastor of a local church in the vicinity of the subject building since August 1998, corroborated Medina’s substantial physical nexus to New York City. The pastor credibly testified that Medina is a parishioner who regularly attended his services “more Sundays than not.” The pastor also convincingly affirmed that he “sees her more often than not” even though there are many parishioners in his church.
Conclusions of Law
Primary Residence
This court credits the honest and consistent testimony of Pastor Murr, Lindblom and Medina over all the witnesses. The credible evidence demonstrates that Medina clearly occupies the subject premises as her primary residence and does not reside in the Malibar Properties, the Melbourne Residence or with Garcia in Alicante, Spain. However, Garcia primarily resides in Alicante, Spain. There is no need to determine Herreros’ primary residence at this time because no valid right of succession exists in light of this court’s factual determination.
Petitioner made much of the fact that Medina was away at sea serving in the Merchant Marines for a substantial period of time in the 1990’s. Petitioner then reviewed Medina’s American Express credit card transactions in isolation and somehow concluded that she had a minimal physical presence during the total number of days she was not working.
*547 While this argument is creative, it is not persuasive. Petitioner failed to take into account other indicia of physical presence in the subject premises such as the Verizon/Bell Atlantic telephone records. Upon review of the voluminous American Express credit card transactions and the Verizon/ Bell Atlantic telephone records for the applicable period, it is clear that Medina spends the vast majority of her nonworking days in the place she calls home, New York City. Of course, there was evidence of quite a few visits of limited duration to Florida and Spain where her son and separated husband are based. The sum and substance of the evidence demonstrated that Medina maintained a substantial physical nexus with the subject premises for actual living purposes. (See 300 E. 34th St. Co. v Habeeb, 248 AD2d 50 [1st Dept 1997]; Cox v J.D. Realty Assocs., 217 AD2d 179 [1st Dept 1995].)
Underutilization
Petitioner also argued that Medina underutilizes the subject premises by virtue of her constant travel for both professional and personal reasons.
This court disagrees. As previously stated, Medina clearly spends the vast majority of her nonworking days in the subject premises. Moreover, Medina’s home is New York City and she clearly does not underutilize the subject premises because of work-related travel for the reasons stated below.
A rent-regulated apartment cannot be maintained for “reasons unrelated to her [the tenant’s] housing needs, or as a convenient pied a terre to be used for occasional visits * * * The restrictions of the Rent Stabilization Law [and which a fortiori apply to the Rent Control Law] were designed to preclude the warehousing of apartments by those who voluntarily establish primary residences elsewhere; it was not intended to allow eviction of those individuals who travel extensively for professional reasons but who otherwise maintain their home in New York City.” (See Coronet Props. Co. v Brychova, 122 Misc 2d 212, 214 [Civ Ct, NY County 1983] [emphasis added], affd 126 Mise 2d 946 [App Term, 1st Dept 1984] [a tenant engaged in an itinerant occupation did not forfeit a rent-regulated apartment by virtue of her constant travel who otherwise maintained it as her primary residence]; Jocar Realty Co. v Sigel, NYLJ, Feb. 9, 1990, at 21, col 2 [App Term, 1st Dept] [a tenant who was required to travel extensively for professional reasons but who otherwise maintained his primary residence prevailed]; see also, Birnant v Szczypien, NYLJ, June 12, 1990, at 21, col 1 [App Term, 1st Dept]; Gracie *548 Townhouse Assocs. v King, NYLJ, May 6, 1991, at 24, col 4 [App Term, 1st Dept]; Rose v Mallare, NYLJ, June 7, 1993, at 28, col 6 [App Term, 1st Dept] [the tenant’s temporary work-related transfer or relocation of finite duration did not manifest any changes in primary residence].)
Due to the increased sophistication of technology in the realm of travel and communication, the world has become an integrated global community. Denizens of our great international city play a significant role in this global community. As a consequence, tenants of rent-regulated apartments, including Medina, may need to travel for professional or work-related reasons. So long as these regulated tenants otherwise maintain their primary residence in New York City, and they do not merely use it as a convenient pied a terre for occasional visits, as Medina clearly demonstrated, such travel would be permitted. Indeed, the above-cited decisional law permitting travel for professional reasons which originated about two decades ago should not ring hollow today, but should resonate in this new millenium. (See Coronet Props. Co. v Brychova, supra; Jocar Realty Co. v Sigel, supra.)
Conclusion
Based on the preponderance of the credible evidence, this court finds that petitioner has not satisfied its burden of demonstrating that respondent Lillian N. Medina does not occupy the subject premises as her primary residence. As stated above, this court need not reach the question of whether or not respondent-undertenant Carlos Herreros either primarily resides or is entitled to succession rights to the subject premises. Inasmuch as respondent Rafael Garcia stipulated that the subject premises has not been his primary residence for more than 10 years, petitioner is entitled to a final judgment of possession against him only. Issuance of the warrant of eviction is forthwith with no stay of execution of the warrant. The petition is dismissed as to respondents Lillian N. Medina and Carlos Herreros.