[765 NYS2d 854]

STAR CITY SPORTSWEAR, INC., Appellant, v YASUDA FIRE & MARINE INSURANCE COMPANY OF AMERICA, Respondent.

First Department, October 28, 2003

## APPEARANCES OF COUNSEL

*Weg & Myers, P.C. (Joshua L. Mallin, Dennis T. D'Antonio* and *Romilda P. Crocamo* of counsel), for appellant.

*Maloof & Browne LLP (Thomas M. Eagan and David T. Maloof* of counsel), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

This is an action to recover under an insurance policy for a $150,849.40 loss sustained as a result of a truck hijacking. The matter is before us on appeal from the grant of the defendant insurer's motion for summary judgment dismissing the complaint.

The evidence shows that on March 13, 2000, when the subject property, a shipment of ladies' clothing, was allegedly stolen by armed robbers, it was aboard a truck parked for approximately five hours on a Mexico City street awaiting entry to the customs area of the airport for air transport to plaintiff in New York City.

On December 7, 1998, defendant issued to plaintiff a Marine Open Cargo policy, which, at the time of the theft, contained the following warranty, appearing in endorsement No. 6:

> "Warranted that each truck be accompanied by an armed escort in front and behind the vehicle carrying the goods. Each armed escort must have a minimum of two (2) armed guards and be equipped with two-way radios and cellular phones. Should escort be **'unarmed,'** there will be a **10%** deductible, on the entire value of the entire shipment, for any losses within Mexico." (Emphasis in original.)

This endorsement, which, at plaintiff's request, amended an earlier warranty, warranted that the carriage truck would be accompanied by two escort vehicles, each equipped with two-way radios and cell phones with a minimum of two guards in each escort vehicle, that is, the front and back, was clear and unambiguous on its face (*see e.g. Freedom Cashier v Federal Ins. Co.*, 262 AD2d 353, 354 [1999]).

In support of its claim, plaintiff submitted a communication from Victor Ponce of DSL, the truck carrier hired by plaintiff, stating that the "crew who were on the theft" were "Truck

Driver: Salvador Munoz Morales[,] Front Truck Driver: John Edgar Flores[,] Rear Truck Driver: Juan Roberto Jiminez." Jiminez and Flores were identified as the "two truckers guarding your load." Defendant obtained notarized statements from each of these drivers, in the form of questionnaires, answered in Spanish in their own handwriting and duly translated into English. These statements reveal that Jiminez, the person in charge, was asleep at the time of the theft, that there was no truck in the rear of the transport truck, that the two-way radios were left at the "sitio" (nearby small building), rather than in the trucks, that none of the three witnesses had cell phones, and that none were guards, had ever worked as a guard or received training to be a guard. Jiminez wrote, "We are not guards[,] we are truckers"; nor did any of them have a permit to be a guard. All three truckers confirmed that the rear truck was parked next to, not behind, as warranted, the truck carrying the merchandise. Munoz, the driver of the truck carrying the shipment, was sitting in another truck, talking and waiting for papers, presumably clearing the shipment for air transport.

Plaintiff argues and the dissent agrees that there is ambiguity in the term guard because it is not defined in the policy, a rather startling conclusion, given that the three truckers, whatever their level of formal education, recognized that they were not guards. Courts should not strain to find an ambiguity in an insurance policy where none exists (*Consolidated Edison Co. of N.Y. v United Coastal Ins. Co.*, 216 AD2d 137 [1995], *lv denied* 87 NY2d 808 [1996]), particularly where the language in question was the result of negotiations between the insurer and insured (*Moshiko, Inc. v Seiger & Smith*, 137 AD2d 170, 174 [1988], *affd* 72 NY2d 945 [1988]). The warranty at issue had been amended at plaintiff's behest in a request that used the very word "guards," and was based on plaintiff's representation that four guards would accompany each truck shipment. Thus, plaintiff, using a new inland carrier, through its broker, submitted to defendant the following proposed change to the existing security arrangement:

> "The Custodial Service will provide a minimum of the following to ensure the contents and integrity of the cargo remain intact:

> "Two (2) Vehicles—One (1) in front of the trailer and one (1) behind the trailer. Each vehicle will have a minimum of two (2) guards armed with semi-

automatic or automatic weapons . . . . All [c]ustodial vehicles are equipped with two way radios and cellular phones."

Plaintiff requested that defendant confirm "in writing (and via endorsement if necessary) that this carrier and [its] protocol are approved." Defendant replied, "Agreed . . . Endorsement in processing"; endorsement No. 6 was thereafter issued. And, of course, as is clear from the record, notwithstanding the DSL invoice relied on by the dissent referring to "GUARD SERVICE," which, in itself, is of no probative value, the persons accompanying the shipment were not, as warranted, guards (*see Jarvis Towing & Transp. Corp. v Aetna Ins. Co.*, 298 NY 280 [1948]).

Plaintiff argues, frivolously, that endorsement No. 6 could be interpreted as requiring only two guards. This argument, based on the language in the endorsement requiring that each truck containing a shipment be "accompanied by an armed escort in front and behind the vehicle carrying the goods," ignores not only the next sentence, which provides that "[e]ach armed escort must have a minimum of two (2) armed guards," but also the fact that, as noted, the specifications plaintiff forwarded to defendant provided for two "[v]ehicles," one in front of the trailer and one behind, each having a minimum of two guards armed with semiautomatic or automatic weapons. There is no room for a construction of an "escort" as anything other than a vehicle.

Nor did plaintiff comply with the warranty contained in endorsement No. 6 insofar as it required that the two escort vehicles be equipped with two-way radios and cell phones. There was no escort vehicle, as the endorsement required, "behind the vehicle carrying the goods." The vehicles did not contain two-way radios, which had been left in the "sitio," a nearby building, and were therefore unavailable. The vehicles did not contain cell phones, which had also been left in the sitio.

Endorsement No. 6 constitutes a warranty as a matter of law within the meaning of Insurance Law § 3106 (a), which, insofar as is relevant, states, " '[W]arranty' means any provision of an insurance contract which has the effect of requiring, as a condition precedent of the taking effect of such contract or as a condition precedent of the insurer's liability thereunder, the existence of a fact which tends to diminish . . . the risk of the occurrence of any loss . . . within the coverage of the contract." Not only is endorsement No. 6 a warranty within the meaning of Insurance Law § 3106 (a), it also constitutes an express,

promissory warranty under common-law principles (*see Commercial Union Ins. Co. v Flagship Mar. Servs., Inc.*, 190 F3d 26, 31 [1999]).

The warranty that the truck will be accompanied by two equipped escort vehicles was conclusively breached as a matter of law (*see Primo Outfitting Co. v Glens Falls Ins. Co.*, 269 App Div 906 [1945], *affd* 295 NY 910 [1946]). Similarly fatal is the breach of the four-guard warranty. In *Anchor Armored Delivery v Certain Underwriters at Lloyd's of London* (146 Misc 2d 545, 546 [1990], *affd* 177 AD2d 611 [1991]), the court held that the fact that the truck had only a two-man crew constituted a breach where it was "[w]arranted not less than three crew to each vehicle whilst carrying interest insured."

In nonmarine cases, a breach of warranty that materially increases the insurer's risk of loss within the meaning of Insurance Law § 3106 (b) precludes coverage as a matter of law (*M. Fabrikant & Sons v Overton & Co. Customs Brokers*, 209 AD2d 206, 207 [1994]). Although plaintiff does not argue otherwise, it is beyond dispute that the presence of two escort vehicles equipped with two-way radios and cellular phones and a minimum of four guards, armed, was material to the risk of loss by hijackers. If nothing else, their presence might well have persuaded the hijackers to look elsewhere.

The dissent correctly observes that the policy provides that if the escorts were unarmed, plaintiff's claim would be subject to a 10% deductible on the value of the shipment. While, as defendant correctly notes, plaintiff never raised the issue before the motion court, "the interpretation of an insurance policy is a question of law which can be raised for the first time on appeal" (*Lumbermens Mut. Cas. Co. v Schrem*, 227 AD2d 280 [1996]). In any event, the deductible provision is inapplicable because plaintiff is not entitled to any recovery under the policy since it breached the warranty in every respect—there were no guards, two-way radios, cell phones or any rear escort vehicle. Victor Ponce's statement that there were vehicles in front and in back of the vehicle carrying the goods is insufficient to create a factual issue as to the location of the accompanying vehicles at the time of the theft since he was not at the scene and thus does not have personal knowledge of the facts. His statement that the men assigned to the vehicles "had two-way radios and cellular phones in both escorts," contradicting the statements of those present at the time of theft, suffers from the same defect.

Plaintiff is not entitled to a partial recovery despite its complete breach of the warranty by limiting its default to the absence of armed guards, when it never provided any guard, much less armed guards. Thus, the complaint was properly dismissed.

We have examined plaintiff's other contentions and find that they are without merit.

Accordingly, the order of the Supreme Court, New York County (Harold Tompkins, J.), entered August 24, 2001, which granted defendant's motion for summary judgment dismissing the complaint, should be affirmed, with costs and disbursements.

ANDRIAS, J. (dissenting). I would reverse and deny defendant's motion for summary judgment dismissing the complaint. Although a breach of warranty that materially increases an insurer's risk of loss would preclude coverage as a matter of law (*M. Fabrikant & Sons v Overton & Co. Customs Brokers*, 209 AD2d 206, 207 [1994]), the factual issues arising from the opposing submissions by the parties preclude summary determination on the present record.

In this action for breach of contract for failure to pay a $150,849.40 insurance claim arising from a truck hijacking at the airport in Mexico City, questions of fact are presented as to whether plaintiff breached a warranty in defendant's policy "that each truck be accompanied by an armed escort in front and behind the vehicle carrying the goods. Each armed escort must have a minimum of two (2) armed guards and be equipped with two-way radios and cellular phones."

The motion court, in granting defendant insurer summary judgment, found that the language requiring an armed escort was unambiguous. However, as noted by the majority, the endorsement in issue was amended at plaintiff's request and replaced an earlier warranty clause, which provided for less guards, and added the following limitation: "Should escort be '**unarmed**,' there will be a **10%** deductible, on the entire value of the entire shipment, for any losses within Mexico" (emphasis in original). Thus, if the only alleged breach were that the escort was unarmed, the applicable penalty would seemingly be a 10% deductible with coverage otherwise provided. Moreover, the term "guards" is not defined in the policy, suggesting at least an ambiguity as to what skills or training the "guards" were to have. All the policy seems to require for coverage to apply is

that there be accompanying vehicles, front and back, with two people in each vehicle.

Contrary to the statements offered by defendant to the effect that none of the men present at the time of the hijacking were "guards," the record reflects that plaintiff was billed $200 by the trucking company, DSL Transportation Services, Inc., for "GUARD SERVICE PERFORMED BY: JUAN EDGAR FLORES ESPANA [and] JUAN ROBERTO JIMENEZ MORENO," two of the three men admittedly on duty at the time of the robbery. Moreover, in response to the sworn statements of the three men present to the contrary, plaintiff offered the affidavit of Victor Ponce, the shipping manager of DSL de Mexico S.A. de C.V., stating that "[s]ecurity for the shipment was under [his] supervision and direction" and that "[t]he truck was escorted by an unarmed escort, with two persons in front and two behind. In front of the load on duty was Juan Edgar Flores . . . with a helper. In back of the load on duty was Juan Roberto Jiminez, also with a helper . . . . The truck that was stolen was being driven by Salvador Munoz Morales. These individuals had two-way radios and cellular phones in both escorts in front of the stolen truck, and the escort behind the truck that was stolen, and also in the stolen truck itself."

Thus, while the statements offered by defendant in support of its motion for summary judgment contradict Mr. Ponce's affidavit, given some of the unclear or confusing one-word answers by the three men in questionnaires prepared by an investigator on behalf of defendant, questions of credibility and reliability as well as the weight to be given to the conflicting evidence are presented, which cannot and should not be determined on a motion for summary judgment, particularly where, as pointed out by plaintiff in its attorney's affidavit in opposition, there has been no opportunity to depose those nonparty Mexican witnesses. Under these circumstances, summary judgment is premature (*see* CPLR 3212 [f]).

BUCKLEY, P.J., and SAXE, J., concur with SULLIVAN, J.; MAZZARELLI and ANDRIAS, JJ., dissent in a separate opinion by ANDRIAS, J.

Order, Supreme Court, New York County, entered August 24, 2001, affirmed, with costs and disbursements.