[843 NYS2d 329]

KATZ PARK AVENUE CORP., Appellant, v BIANCA JAGGER, Respondent, et al., Defendants.

First Department, October 18, 2007

### APPEARANCES OF COUNSEL

*Pryor Cashman Sherman & Flynn LLP,* New York City (*Todd E. Soloway* and *Joshua D. Bernstein* of counsel), for appellant.

*Law Office of Ryan S. Goldstein, P.L.L.C.,* New York City (*Ryan S. Goldstein* of counsel), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

Defendant Jagger, pursuant to a written lease, is the tenant of an apartment in plaintiff's building. In November 2003, plaintiff landlord served notice of nonrenewal, on nonprimary residence grounds, of the lease due to expire on February 29, 2004 (*see* Rent Stabilization Code [9 NYCRR] § 2524.2 [c] [2]; § 2524.4 [c]). In June 2004, it commenced an action for ejectment in the Supreme Court based on the same ground (the first action). The tenant moved for summary judgment dismissing the ejectment claim, asserting that in November 2003, plaintiff had served her with a notice of renewal of the lease (for a one-year term, to expire on February 28, 2005) before it served notice of nonrenewal on nonprimary residence grounds, and that she executed the lease and submitted it to plaintiff approximately one month later. Plaintiff cross-moved for summary judgment, arguing that the tenant is a British citizen who entered the United States on a B-2 tourist visa, and is thus statutorily barred from maintaining a permanent residence in the United States.

In November 2004, plaintiff again served the tenant with notice that it did not intend to renew the lease on nonprimary residence grounds, referencing the lease that she claimed was to expire on February 28, 2005. Thereafter, while plaintiff's motion for summary judgment in the first action was sub judice, it commenced a second ejectment action and moved for summary judgment on essentially the same ground. Prior to the return date of that motion, the court dismissed the cause of action for ejectment in the first action. The court held that the tenant's

acceptance of the proposed renewal in December 2003 created a binding lease agreement, and therefore, the ejectment claim "cannot be maintained because the notice of termination was superseded by [the tenant's] renewal of the lease" (2005 NY Slip Op 30128[U], *3). The court nevertheless went on to address the landlord's primary residence claim, concluding that plaintiff proceeded "on the erroneous premise that the concepts of domicile and primary residence can be equated" (*id.* at *4). The court noted that a person may be viewed as a primary resident of a New York City apartment even if he or she is domiciled in another state.

Thereafter, the tenant cross-moved in the second action for summary judgment dismissing the ejectment claim on various grounds, including res judicata, improper service of the nonrenewal notice and constructive eviction. The court denied the motion and cross motion. As to the motion, the court held that the landlord had proceeded on the erroneous premise that the two terms—primary residence and domicile—are synonymous. The court noted the distinction between domicile—"where [a person] has established a fixed habitation and intends to remain permanently or indefinitely"—and primary residence—an "ongoing, substantial, physical nexus with the . . . premises for actual living purposes" (2005 NY Slip Op 30126[U], *2-3). Plaintiff's motion for summary judgment should have been granted.

> "A landlord may recover a rent-controlled apartment which is 'not occupied by the tenant . . . as his [or her] primary residence, as determined by a court of competent jurisdiction.' . . . Primary residence has been defined as an 'ongoing, substantial, physical nexus with the controlled premises for actual living purposes—which can be demonstrated by objective, empirical evidence.' . . .
>
> "No single factor is determinative of the issue of primary residence" (*Chelsmore Apts. v Garcia*, 189 Misc 2d 542, 543-544 [2001] [citations omitted]; *see also* 9 NYCRR 2520.6 [u]; *East End Temple v Silverman*, 199 AD2d 94 [1993]).

The tenant concedes that she is a citizen of the United Kingdom, and therefore, to the extent she resides in the United States, she does so as a nonimmigrant on a B-2 tourist visa, which requires her to maintain a permanent residence outside the United States that she has no intention of abandoning (*see*

*Jain v Immigration & Naturalization Serv.*, 612 F2d 683, 686 [2d Cir 1979], *cert denied* 446 US 937 [1980]). The Federal Immigration and Nationality Act (INA) defines a nonimmigrant as

> "an alien (other than one coming for the purpose of study or of performing skilled or unskilled labor or as a representative of foreign press, radio, film, or other foreign information media coming to engage in such vocation) having a residence in a foreign country which he has no intention of abandoning and who is visiting the United States temporarily for business or temporarily for pleasure" (8 USC § 1101 [a] [15] [B]). The INA defines residence as "the place of general abode," which is a person's "principal, actual dwelling place in fact, without regard to intent" (§ 1101 [a] [33]).*

The holder of a B-1 or B-2 visa must show, inter alia, that he or she "intends to leave the United States at the end of the temporary stay" (22 CFR 41.31 [a] [1]). Such visitors "may be admitted for not more than one year and may be granted extensions of temporary stay in increments of not more than six months each" (8 CFR 214.2 [b] [1]). Thus, under the applicable immigration statute and regulations, the tenant is required to maintain her principal residence in the United Kingdom during her stay in the United States, which is temporary.

Under rent regulation, the terms "principal residence" and "primary residence" are used interchangeably (*see Rocky 116 v Weston*, 195 Misc 2d 363, 364 [App Term 2003]). The tenant does, in fact, maintain at least one residence in the United Kingdom, a luxury apartment in the Belgravia section of London. A B-2 visa holder cannot claim simultaneous compliance with the immigration statute's "principal" residence requirement and the primary residence requirement under the rent regulation law. This is not, as the dissent contends, to equate domicile and primary residence, but merely to reach the obvious conclusion that one who maintains her "principal, actual dwelling place in fact" in the United Kingdom cannot maintain a primary residence in New York.

We also note that to deny relief to the landlord in this instance, thereby permitting the tenant to claim primary residency in the subject premises, would contravene federal

---

* The specificity of this definition clearly belies the dissent's assertion that in immigration law, the term "residence" "refers not to any particular dwelling but to the United States as a whole."

policy (*see Matter of New York State Labor Relations Bd. v Le Crepe—No. 3*, 78 Misc 2d 171 [1973] [portion of Board's order requiring reinstatement of discharged employees contravened federal policy if, in fact, employees are nonimmigrant aliens as defined in federal statute]).

Even were we to conclude that the holder of a B-2 tourist visa is not precluded, ipso facto, from maintaining a primary residence in a rent stabilized apartment, the record is devoid of any evidence supporting this tenant's primary residence claim or showing that she is in the United States as anything other than a temporary visitor (*see* 8 USC § 1101 [a] [15] [B]). Since she has thus failed to "rebut the landlord's evidence and demonstrate that there was a substantial physical nexus to the apartment" (*cf. Glenbriar Co. v Lipsman*, 5 NY3d 388, 393 [2005]), summary judgment is warranted.

Conspicuously absent is an affidavit from the tenant offering any evidence to support her claim of primary residence or to defeat the showing of residency in the United Kingdom. Her attorney's statement that she is unable to occupy the apartment because of a mold condition is beside the point, and, in any event, is not based on personal knowledge and is thus insufficient to create an issue of fact on the residency issue (*see Star City Sportswear v Yasuda Fire & Mar. Ins. Co. of Am.*, 1 AD3d 58, 62 [2003], *affd* 2 NY3d 789 [2004]). In that regard, we note that the tenant's affirmative defenses—based on constructive eviction, failure to make the premises habitable, and retaliation—even if proven, would not defeat plaintiff's showing of entitlement to judgment as a matter of law.

While the dissent concludes that a tenant need only show that the premises will be maintained as a primary residence for the duration of the lease, this defendant has made no such showing. The dissent's reliance on the possibility of adjustment of immigration status, which can result in a protracted stay in the United States, is misplaced. Those circumstances are not present in this case. And while, as the dissent notes, the cases do not offer a precise definition of primary residence, the term "primary" is not at all ambiguous; under any definition, maintenance of a principal residence in another country is totally at odds with a primary residence in New York.

The dissent inexplicably points to the tenant's failure to file state income tax returns in 2003 and 2004 and her limited occupancy of the apartment in the first four months of 2003, concluding that these circumstances are irrelevant to whether

she was a primary resident in connection with a lease ending in 2004. These circumstances are indeed irrelevant to the question of primary residency. The only relevant circumstance is the tenant's conceded visa status, and in the absence of evidence of a change in that status, any claim of primary residence is doomed to failure.

There is no merit to the tenant's argument that the ejectment claim is barred by res judicata. While a valid final judgment bars future actions between the same parties on the same cause of action (*Parker v Blauvelt Volunteer Fire Co.*, 93 NY2d 343, 347 [1999]), the cause of action here is not the same one involved in the first action. That action related to a lease term ending on February 29, 2004, while this one relates to a subsequent lease term, ending on February 28, 2005. Nor does collateral estoppel apply, since the issue of whether the tenant maintained the apartment as her primary residence was not necessarily decided in the first action (*see Shanley v Callanan Indus.*, 54 NY2d 52, 57 [1981]; *see also McWain v Pronto*, 30 AD3d 675, 676-677 [2006]); the ejectment claim, as noted, was dismissed on the ground that the notice of termination was superseded by the tenant's lease renewal.

While plaintiff asserts that it is entitled to attorney's fees incurred in connection with the prosecution of this action, the record does not include a copy of the lease. Such entitlement should be determined on remand.

Accordingly, the order of the Supreme Court, New York County (Leland DeGrasse, J.), entered October 12, 2005, which, insofar as appealed from as limited by the briefs, denied plaintiff's motion for summary judgment and to strike and/or dismiss the affirmative defenses and counterclaims, should be reversed, on the law, without costs or disbursements, the motion granted to the extent of awarding plaintiff summary judgment on its ejectment cause of action, the affirmative defenses stricken, the second, third and fourth counterclaims dismissed, and the matter remanded to determine plaintiff's entitlement to attorney's fees, and upon such a demonstration, for an inquest to determine the amounts due plaintiff therefor and for use and occupancy.

MALONE, J. (dissenting). By summarily ruling that all holders of B-2 tourist visas cannot, as a matter of law, maintain primary residences in New York City rent-stabilized apartments, the majority erroneously equates domicile with primary residence. The

flaw in this reasoning lies in part in the majority's borrowing the Immigration and Nationality Act's definition of "residence," which clearly denominates an affiliation with an entire nation but was not intended by Congress to denote a connection with a particular unit. Use of the term "residence" in immigration law is analogous to the concept of domicile or citizenship; as applied domestically, it refers not to any particular dwelling but to the United States as a whole (hence, the term "resident alien"). An alien's "permanent residence" in this or another country that the alien has "no intention of abandoning" is a reference to citizenship or domicile, not to any particular place of abode (*see e.g. Lovell v Immigration & Naturalization Serv.*, 52 F3d 458, 461 [2d Cir 1995] ["residence of long duration in this country" as a factor]). In contrast, the term "primary residence" has not been statutorily defined, leaving the interpretation of the use of that term (*see* NY City Rent and Eviction Regulations [9 NYCRR] § 2200.2 [f] [18]) to the courts (*see Berwick Land Corp. v Mucelli*, 249 AD2d 18, 18 [1998] ["ongoing, substantial, physical nexus with the controlled premises for actual living purposes"]).

Also misplaced is the majority's reliance on the tenant's "temporary visitor" status in the United States as a complete bar to compliance with the primary residence requirement under the rent regulation law. The tenant's immigration status conclusively establishes only that she is *domiciled* in the United Kingdom, which is undisputed. Under federal law, domicile, defined as "where a person has 'h[er] true fixed home and principal establishment, and to which, whenever [s]he is absent, [s]he has the intention of returning,' " determines citizenship (*Linardos v Fortuna*, 157 F3d 945, 948 [2d Cir 1998] [citation omitted]). While domicile and residence have been "frequently used, even in our statutes, as if they had the same meaning, . . . they are not identical terms, for a person may have two places of residence . . . but only one domicile" (*Matter of Newcomb*, 192 NY 238, 250 [1908]).

In contrast, whether a rent-stabilized apartment is utilized as a primary residence is a question of fact requiring the tenant to demonstrate "an ongoing, substantial, physical nexus with the controlled premises for actual living purposes—which can be demonstrated by objective, empirical evidence" (*Emay Props. Corp. v Norton*, 136 Misc 2d 127, 129 [App Term 1987]). In focusing on the tenant's immigration status, the majority attempts to limit rent-stabilized apartments to *domiciled* residents of New York City. However, there is no such require-

ment under existing state law. Further, while recognizing the general principle that "[n]o single factor is determinative of the issue of primary residence" (quoting *Chelsmore Apts. v Garcia*, 189 Misc 2d 542, 544 [2001]), the majority, by basing its conclusion on the tenant's immigration status, ignores it.

While a tourist B-2 visa indicates that the duration of an alien's stay in this country is intended to be "temporary," the availability of extensions (8 CFR 214.2 [b] [1]), the possibility of adjustment of immigration status to a student F-1 visa (*see e.g. Lhanzom v Gonzales*, 430 F3d 833, 836 [7th Cir 2005]), asylum (*see e.g. Pavlova v Immigration & Naturalization Serv.*, 441 F3d 82 [2d Cir 2006] and even the grant of temporary employment privileges (*see e.g. Urban v Immigration & Naturalization Serv.*, 123 F3d 644, 646 [2d Cir 1997]) can result in a protracted stay in the United States. Since a rent-stabilized lease is available for a period of one year, a foreign national who arrives on a tourist visa and applies for asylum, matriculates at a local college or simply obtains one or more extensions of the B-2 tourist visa is not precluded, merely by the duration of the initial permissible stay in the United States, from establishing primary residence for the duration of the lease. In short, the prospective tenant need only show that the premises will be maintained as a primary residence for the duration of the rent-stabilized lease, whether it is for one, two or three years. While this tenant's B-2 tourist visa requires her to maintain a *domicile* outside the United States, it does *not* disqualify her from maintaining a primary residence here. Thus, the bare fact that a prospective tenant holds a tourist visa is not dispositive of primary residence and is but one factor in determining primary residence (*cf. Sommer v Ann Turkel, Inc.*, 137 Misc 2d 7, 10 [App Term 1987], *lv denied* 1988 NY App Div LEXIS 65).

As this appeal comes before us upon the landlord's motion for summary judgment based on the erroneous premise that domicile and primary residence are synonymous, a pure question of law is presented. As such, whether this defendant will be able to amass sufficient proof to demonstrate the requisite nexus to the premises to establish primary residence (*cf. Glenbriar Co. v Lipsman*, 5 NY3d 388, 393 [2005]) is not before us and must await a decision by the trier of fact after appropriate discovery, if necessary (*New York Univ. v Farkas*, 121 Misc 2d 643 [1983]). In any event, Supreme Court appropriately regarded the tenant's immigration status as simply one factor to be considered along with all other attendant facts and circumstances,

and properly denied plaintiff landlord's application for summary judgment. By its very definition, a person's "primary residence" may change over time, and a determination as to such person's primary residence as of one lease period and one point in time ought not to be binding as to whether that person occupies that place as a "primary residence" during a later lease period. The fact that the tenant did not file state income taxes in 2002 or 2003, or that she was in New York only 14 of the first 120 days of 2003, is irrelevant to the question of whether she occupied the subject apartment as her primary residence in 2004 and 2005, since, as the majority correctly states, the subject lease relates to a one-year term ending on February 28, 2005. Accordingly, the order should be affirmed.

MARLOW and McGUIRE, JJ., concur with SULLIVAN, J.; TOM, J.P., and MALONE, J., dissent in a separate opinion by MALONE, J.

Order, Supreme Court, New York County, entered October 12, 2005, reversed, on the law, without costs or disbursements, plaintiff's motion for summary judgment granted to the extent of awarding it summary judgment on its ejectment cause of action, the affirmative defenses stricken, the second, third and fourth counterclaims dismissed, and the matter remanded to determine plaintiff's entitlement to attorney's fees, and upon such a demonstration, for an inquest to determine the amounts due plaintiff therefor and for use and occupancy.