[898 NE2d 17, 869 NYS2d 4]

KATZ PARK AVENUE CORP., Respondent, v BIANCA JAGGER, Appellant, et al., Defendants.

Argued September 3, 2008; decided October 23, 2008

**POINTS OF COUNSEL**

*Law Offices of Roger D. Olson,* New York City (*Roger D. Olson* of counsel), *Lewis & Roberts, PLLC,* Raleigh, North Carolina (*Daniel K. Bryson* of counsel), and *Law Office of Ryan S. Goldstein, PLLC,* New York City (*Ryan S. Goldstein* of counsel), for appellant. I. The Appellate Division majority opinion erred in holding, as a matter of law, that a foreign citizen with a B-1/B-2 visa is precluded from maintaining a "primary residence" in New York City. (*Alvarez v Prospect Hosp.,* 68 NY2d 320; *Zuckerman v City of New York,* 49 NY2d 557; *Riverside Syndicate, Inc. v Munroe,* 10 NY3d 18; *Berkeley Assoc. Co. v Camlakides,* 173 AD2d 193, 78 NY2d 1098; *Hughes v Lenox Hill Hosp.,* 226 AD2d 4; *MSG Pomp Corp. v Doe,* 185 AD2d 798; *Chelsmore Apts. v Garcia,* 189 Misc 2d 542; *East End Temple v Silverman,* 199 AD2d 94; *Matter of New York State Labor Relations Bd. v Le Crepe—No. 3,* 78 Misc 2d 171; *Rocky 116 v Weston,* 195 Misc 2d 363; *Thornton v Baron,* 5 NY3d 175.) II. The Appellate Division majority erred in granting summary judgment where plaintiff failed to establish its entitlement to judgment as a matter of law because (a) the notice of termination was predicated upon a lease that was declared a "nullity" for its purported attempt to exempt the subject apartment from the Rent Stabilization Law, and (b) there was no evidence in admissible form tending to establish that defendant maintained her primary residence at any location other than at the subject premises. (*Drucker v Mauro,* 30 AD3d 37; *Riverside Syndicate, Inc. v Mun-*

*roe,* 10 NY3d 18; *Draper v Georgia Props.,* 94 NY2d 809; *Glenbriar Co. v Lipsman,* 5 NY3d 388.) III. The Appellate Division majority erred in remanding plaintiff's application for an award of attorney's fees and use and occupancy where it had failed to provide the court with a copy of the lease that was a nullity and, therefore, void ab initio. (*Riverside Syndicate, Inc. v Munroe,* 10 NY3d 18; *Rose v Elias,* 177 AD2d 415.)

*Belkin Burden Wenig & Goldman, LLP,* New York City (*Magda L. Cruz, Sherwin Belkin* and *Kristine L. Grinberg* of counsel), for respondent. I. Appellant's B-2 temporary tourist visa bars appellant from maintaining a primary residence in the United States. (*Emay Props. Corp. v Norton,* 136 Misc 2d 127; *Sommer v Ann Turkel, Inc.,* 137 Misc 2d 7, 139 Misc 2d 892; *Matter of Herzog v Joy,* 74 AD2d 372, 53 NY2d 821; *Emel Realty Corp. v Carey,* 288 AD2d 163; *Matter of Stahl Assoc. Co. v State Div. of Hous. & Community Renewal, Off. of Rent Admin.,* 148 AD2d 258; *Chelsmore Apts. v Garcia,* 189 Misc 2d 542; *Glenbriar Co. v Lipsman,* 5 NY3d 388; *Jain v Immigration & Naturalization Serv.,* 612 F2d 683; *Ruiz-Almanzar v Ridge,* 485 F3d 193; *Mugalli v Ashcroft,* 258 F3d 52.) II. The Appellate Division properly held that appellant failed to meet the primary residence criteria under the rent stabilization laws. III. The Appellate Division properly remanded the owner's application for attorney's fees and use and occupancy to the lower court.

### OPINION OF THE COURT

Smith, J.

We hold that, at least in the absence of unusual facts, a foreign national who is in the United States on a tourist visa cannot meet the "primary residence" requirement of New York City's rent regulations.

Defendant's landlord brought this ejectment action to remove her from a rent stabilized apartment in Manhattan. The landlord alleged that "the Premises are not occupied . . . as the Tenant's primary residence." In support of a motion for summary judgment, the landlord submitted photocopies of pages from defendant's passport, showing that she is a British citizen and was admitted to the United States on a "B-2" visa, commonly known as a tourist visa. In response to the motion, defendant submitted no evidence as to her primary residence, essentially taking the position that the landlord had failed to meet its burden of proof.

Supreme Court denied the landlord's motion (2005 NY Slip Op 30126[U] [2005]), but the Appellate Division reversed, with

two Justices dissenting (46 AD3d 186 [2007]). The Appellate Division granted defendant leave to appeal, and we now affirm.

Under the Rent Stabilization Code (RSC), a landlord may recover possession of a rent stabilized apartment from a tenant whose lease has expired if the apartment "is not occupied by the tenant . . . as his or her primary residence" (RSC [9 NYCRR] § 2524.4 [c]). The Code does not define "primary residence" except to say that "no single factor shall be solely determinative," and to list "evidence which may be considered" in making the determination (RSC § 2520.6 [u]). An appellate court has defined the term as "an ongoing, substantial, physical nexus with the . . . premises for actual living purposes" (*Emay Props. Corp. v Norton*, 136 Misc 2d 127, 129 [App Term, 1st Dept 1987]).

But while the rent regulations require a "primary residence" in New York, the holder of a B-2 visa is required to have a "principal, actual dwelling place" outside the United States. Federal regulations make B-2 visas available to aliens who are "visitors for pleasure" of the kind described in section 101 (a) (15) (B) of the Immigration and Nationality Act (8 USC § 1101 [a] [15] [B]; *see* 8 CFR 214.1 [a] [1] [i]; [2]). That subsection of the statute applies only to "an alien . . . having a residence in a foreign country which he has no intention of abandoning" (8 USC § 1101 [a] [15] [B]), and "residence" is defined as "principal, actual dwelling place in fact, without regard to intent" (8 USC § 1101 [a] [33]).

Thus, if her B-2 visa is valid, defendant has a "principal, actual dwelling place in fact" outside the United States. How she could at the same time have a "primary residence" in New York City is something she has not explained. The distinction between "primary residence" and "domicile" (*see Emay Props.*, 136 Misc 2d at 128), relied on by Supreme Court and the dissenting Justices in the Appellate Division, is not relevant, because neither defendant's status under the rent regulations nor her immigration status depends on domicile.

We conclude that, at least absent some unusual circumstance, a primary residence in New York and a B-2 visa are logically incompatible. No such unusual circumstance exists here. Perhaps there are rare cases in which a tenant could show that her principal dwelling place for immigration purposes is in one place, and her primary residence for rent regulation purposes in another, but defendant has not even tried to make such a show-

ing. Nor has she suggested that her B-2 visa was issued in error, or has become invalid. Thus, we need not consider whether someone who is in the United States illegally may have a primary residence in New York for rent regulation purposes.

Accordingly, the order of the Appellate Division should be affirmed with costs. The certified question should be answered in the affirmative.

CIPARICK, J. (concurring). Because I cannot agree that, as a matter of law, a foreign citizen with a B-1 (business) or a B-2 (tourist) visa is automatically precluded from maintaining a primary residence under New York's rent stabilization laws, and because I further disagree with the proposition that "a primary residence in New York and a B-2 visa are logically incompatible" (*see* majority op at 317), I write separately. I nonetheless concur in the result as I believe summary judgment was properly granted in this ejectment action since there are no triable issues of fact remaining as to the issue of primary residency considering the unrebutted evidence of the tenant's sporadic and tenuous ties to the occupancy of the apartment, her B-2 "tourist" visa, her admissions that she has not occupied the apartment for over three years (albeit due to a mold condition), reports from building personnel and the lack of New York State tax returns or other proof of residence. Defendant's attempt to rebut plaintiff's contentions in an attorney's affirmation pertaining to solely the issue of an alleged mold condition is insufficient to raise a triable issue of fact.

Rent Stabilization Code (9 NYCRR) § 2524.4 (c) allows a landlord to refuse to renew a stabilized tenant's lease if the tenant does not occupy the premises as a "primary residence." The purpose of this law is to alleviate the shortage of housing in New York City by returning underutilized apartments to the marketplace for residents who need them (*see Matter of Herzog v Joy*, 74 AD2d 372, 374 [1st Dept 1980], *affd for reasons stated below* 53 NY2d 821 [1981]; *see also* Governor's Mem approving L 1971, ch 371, 1971 McKinney's Session Laws of NY, at 2608). It is axiomatic that residents of New York City who may be in dire need of affordable housing should be able to obtain such housing before occupants who reside elsewhere and misuse rent-stabilized properties as, for example, warehouses, pieds-à-terre for occasional visits or for other more nefarious purposes.

The landlord bears the initial burden of showing that the tenant did not utilize the apartment as a primary residence (*see Glenbriar Co. v Lipsman*, 5 NY3d 388, 392 [2005]). Although

the terminology "primary residence" is, as the majority notes, left undefined by the Code, appellate courts have described it as "an ongoing, substantial, physical nexus with the controlled premises for actual living purposes—which can be demonstrated by objective, empirical evidence" (*Emay Props. Corp. v Norton*, 136 Misc 2d 127, 129 [App Term, 1st Dept 1987]).

The Code does, however, outline the evidentiary factors to be considered in determining primary residency. In doing so, it provides in unequivocal terms that "no single factor shall be solely determinative" (9 NYCRR 2520.6 [u]), because a court should consider all of the relevant evidence, if applicable, including: (1) the address listed by the tenant on any tax return, driver's license, motor vehicle registration or other document filed with a public agency; (2) the tenant's address for voter registration; (3) the amount of time the tenant occupies the rent-regulated apartment, specifically if the tenant occupies the apartment for less than an aggregate total of 183 days in the most recent calendar year; and (4) any subletting of the apartment (*see* 9 NYCRR 2520.6 [u] [1]-[4]).

Although this record is replete with indicia of tenant's non-primary residency, the majority relies on just a single factor—her B-2 visa status (*cf. Glenbriar*, 5 NY3d at 391, 393 [parties put forward evidence of several factors in arguing primary residence]; *Draper v Georgia Props.*, 94 NY2d 809, 811 [1999] [same])—giving undue weight to federal immigration laws in addressing this case which is governed by the Rent Stabilization Code.

United States Constitution, article I, § 8 (4) provides that the federal government has sole authority over immigration matters. The federal government passes immigration laws with a totally different purpose and intent than the Rent Stabilization Code. Consequently, the use of similar terminology in an immigration law should not define the important rights and protections for tenants under our rent stabilization laws. Thus, an analysis of a tenant's immigration status should not be dispositive or, in certain cases, even relevant to a resident's ability to maintain rent-stabilized housing (*see Balbuena v IDR Realty LLC*, 6 NY3d 338, 362-363 [2006] [violation of immigration laws alone cannot prevent recovery of damages for work-related injuries]).

Furthermore, as stated in the dissenting opinion below, it is unclear under our current immigration laws whether a B-1 or

B-2 visa holder may be able to stay in the United States for more than one year. B-1 and B-2 visa holders may obtain six-month extensions (*see* 8 CFR 214.2 [b] [1]), or they may be able to adjust their status by being granted (1) political asylum (*see e.g. Pavlova v Immigration & Naturalization Serv.*, 441 F3d 82 [2d Cir 2006]); (2) student visas (F-1 visas) (*see e.g. Ayoub v Immigration & Naturalization Serv.*, 708 F2d 721 [6th Cir 1982] [table; text at 1982 US App LEXIS 11305]); or (3) temporary-worker privileges (*see e.g. Urban v Immigration & Naturalization Serv.*, 123 F3d 644, 646 [7th Cir 1997]). Thus, the fact that a resident has a B-1 or B-2 visa may not adequately define the duration of residency as adjustments in immigration status can often result in a protracted stay and in some cases be coterminous with the duration of a rent-stabilized lease.

I thus conclude that the evidence submitted by plaintiff, including defendant's immigration status, her extremely limited use of the apartment and the lack of documentary evidence linking her to the residence establishes a prima facie case of nonprimary residence. Because defendant has failed to submit evidence to rebut plaintiff's contentions and likewise to demonstrate that she maintains a substantial physical nexus to the apartment, summary judgment for plaintiff is warranted.

Judges GRAFFEO, READ, PIGOTT and JONES concur with Judge SMITH; Judge CIPARICK concurs in result in a separate opinion; Chief Judge KAYE taking no part.

Order affirmed, etc.