Second 82nd Corp., Petitioner-Landlord-Appellant,
against
Raymond Robin Veiders, Respondent-Tenant-Respondent, and "John Doe" and "Jane Doe," Respondents-Undertenants.



Landlord appeals from a final judgment of the Civil Court of the City of New York, New York County (Sabrina B. Kraus, J.), entered on or about October 14, 2014, after a nonjury trial, in favor of tenant dismissing the petition in a holdover summary proceeding.




Per Curiam.
Final judgment (Sabrina B. Kraus, J.), entered on or about October 14, 2014, affirmed, with $25 costs.
In this summary holdover proceeding to recover possession of a rent-stabilized apartment on the ground that it had not been occupied as a primary residence, Civil Court dismissed the petition, after a nonjury trial, finding that, although the long-term (30-year) tenant was absent from the East 82nd Street apartment for more than 183 days per year during the relevant period, his absence was "temporary and excusable" and thus did not mandate a finding of nonprimary residence. The court's fact-based determination that tenant's absence was excusable (see Rent Stabilization Code [9 NYCRR] §§ 2520.6[u], 2523.5[b][2]), represents a fair interpretation of the evidence (see 542 E. 14th St. LLC v Lee, 66 AD3d 18, 20-21 [2009]), based as it was on such factors as tenant's provision of end-of-life care for his elderly mother, in Clarence, NY, and remaining in Clarence to wind up the estates of both his mother and aunt, and to deal with other family-related exigencies. The trial evidence also supports the court's finding that tenant "consistently returned" to the subject apartment "while he was dealing with family affairs upstate"; and "kept all his personal belongings" in the apartment, which he did not sublet, and [*2]"continued to receive mail there." Civil Court, having observed the witnesses' demeanor and heard their testimony, was in a better position to make findings of fact on these issues, especially as resolution of these issues rested in large measure on considerations relating to the credibility of witnesses (see Claridge Gardens, Inc. v Menotti, 160 AD2d 544, 545 [1990]).
Contrary to the characterization of our dissenting colleague, our affirmance today does not create a new "business pursuits" exception to the primary residence requirement of the rent stabilization law. To the contrary, this particular tenant faced an unenviable personal choice of remaining in New York City or going to Clarence to care for his mother; and then remaining in Clarence to do what was necessary for himself and his family to wind up the estates of his mother and aunt. While tenant could have hired others to perform some of these tasks, the choice was his to make and it is not our function to second guess his decision. The Code is not so inflexible as to penalize a tenant who must temporarily relocate when compelling personal or family obligations will arise. Indeed, "the Code allows the court to apply the flexible definition of . . . the other reasonable grounds' clause of section 2523.5(b)(2) in determining" whether a temporary absence is excusable (542 E. 14th St. LLC v Lee, 66 AD3d at 22). 
Our Court, as a reviewing court, is obliged to defer to the findings of the trial court "unless it is obvious that the court's conclusions could not be reached under any fair interpretation of the evidence, especially when the findings of fact rest in large measure on considerations relating to the credibility of witnesses" (Claridge Gardens v Menotti, 160 AD2d 544, 545 [1990]). In this case, Civil Court's findings are amply supported by record evidence and will not be disturbed.
I concur
Dissenting Opinion
Martin Shulman, J.
In this nonprimary residence holdover proceeding, and as more fully discussed, infra, the majority's affirmance signals a new, judicially created "business pursuits" exception to justify a tenant's absence from a rent regulated apartment during the relevant statutory period prior to the service of a lease non-renewal notice (i.e., Golub notice [FN1]
), an inexcusable situation never contemplated by the Rent Stabilization Law and Code. Thus, I must respectfully dissent.

On this record at trial, there are certain facts grounded on either testimonial admissions or via documentary/empirical evidence that cannot be challenged irrespective of credibility findings which perforce supports my opinion that the "fact-finding court's conclusion could not be reached under any fair interpretation of the evidence . . ." (Claridge Gardens v Menotti, 160 AD2d 544, 545 [1990]).

Some historical background gleaned from the record is highly relevant. In March 2007, landlord commenced a prior nonprimary residency holdover proceeding against the tenant claiming, inter alia, that tenant was primarily residing in a family-owned home located at 5177 [*3]Shimmerville Road, Clarence, New York, New York 14031 ("Clarence NY residence"), and was absent from his rent stabilized apartment (i.e., 240 East 82nd Street, Apt. 18C, New York)("NYC Apt") for more than 183 days each year during the relevant statutory period. Shortly after the prior proceeding started, tenant challenged the legal sufficiency of the underlying non-renewal notice convincing the lower court to dismiss the holdover petition. In reversing the lower court and reinstating the petition, this court concluded that the "notice . . . set forth case-specific allegations tending to support landlord's nonprimary residency claim, and was sufficient to satisfy the specificity requirements of Rent Stabilization Code (9 NYCRR) § 2524.2 (b) and governing precedent [citations omitted] . . ." (Second 82nd Corp. v Veiders, 34 Misc 3d 130[A], 2011 NY Slip Op 53211[U] [App Term, 1st Dept. 2011]) (emphasis added). On remand, landlord evidently learned that tenant was admittedly absent from his NYC Apt to care for his (now-deceased) mother at the Clarence NY residence. Pursuant to an August 14, 2007 so-ordered stipulation of settlement, landlord agreed to discontinue the prior proceeding and offered tenant a two-year renewal lease without charging an otherwise lawful rent increase. Tenant concomitantly agreed that he "may continue to care for his mother as needed, and once that care is no longer necessary, the [t]enant will resume staying at the subject apartment." (emphasis added).

Tenant's mother passed away on September 25, 2007, just one month after tenant executed the two-year renewal lease on August 17, 2007, for the ensuing November 17, 2007- November 16, 2009 renewal period (and the relevant, "look at" period prior to landlord's service of the July 22, 2009 non-renewal notice, the predicate notice for the underlying holdover proceeding that is the subject of this appeal) ("2007-2009 period"). Soon thereafter, tenant filed a probate petition in Erie County listing the Clarence NY residence as his domicile and executed the verification form on February 4, 2008, attesting to being domiciled at the Clarence NY residence. Tenant further listed his Clarence NY residence as his domicile in Erie County Surrogate Court filings for his late aunt who passed away in February 2007. What is further undisputed is that tenant intentionally utilized his Clarence NY residence as his address on his driver's license, motor vehicle registrations and insurance banking and primary credit cards (the latter records verifying that a majority of his transactions occurred upstate during the 2007-2009 period).

During the 2007-2009 period, tenant admittedly was absent for more than 183 days during each of those years to: personally wind up his mother's estate, personally wind up his aunt's estate, personally renovate the Clarence NY residence to ultimately sell it for a six-figure sum and personally manage a family owned 20-apartment complex in Batavia, New York, relying exclusively on the rental income for support. It was also no surprise to learn during the trial that electricity usage at the NYC Apt was negligible during the 2007-2009 period.

Rent Stabilization Code (9 NYCRR) §2520.6(u) lists certain significant evidentiary factors to conclude whether a tenant is maintaining a regulated apartment as a primary residence. They are, in no order of importance: 1) the use or non-use of a regulated apartment address on a tax return, motor vehicle registration, driver's license or other document filed with any public agency; 2) the use or non-use of the regulated apartment address as a voting address; 3) a tenant's actual physical occupancy of the regulated apartment for less than 183 days in any calendar year (during the relevant period prior to the expiration of the most recent renewal lease); and 4) the subletting of the regulated apartment. These factors must be viewed in their totality and "no [*4]single factor shall be solely determinative. . ." (id.). Weighing these factors, the trial court considered two of these factors in landlord's favor: "[Landlord] did establish on its prima facie case that . . . [tenant] was absent from the . . .[NYC Apt] for more than 183 days per year during the relevant period and that . . . [tenant] listed as address other than the . . . [NYC Apt] as his address on DMV documents and other documents filed with public agencies [as well as verified Erie County Surrogate Court filings] . . ." (bracketed matter added).

But, there was more. In addition to documentary paper trails (e.g., court filings, financial records, etc.) all leading directly to his Clarence NY residence, there was also negligible electricity usage reported in his NYC Apt during the 2007-2009 period, viz., additional objective evidence of tenant not maintaining an "ongoing, substantial physical nexus with the . . . premises for actual living purposes . . ." (Katz Park Ave. Corp. v Jagger, 11 NY3d 314, 317 [2008]), which has been held to be an evidentiary factor of consequence (see Carmine Ltd. v Gordon, 41 AD3d 196, 199 [2007]).

As the trial record makes clear, the testimony, documents and tenant's sworn-to admissions demonstrate that tenant did not occupy his NYC Apt as his primary residence for over four years (see Glenbriar Co. v Lipsman, 5 NY3d 388 [2005]).

To be fair, tenant's admitted absence from his NYC Apt during the 2005-2007 period presumably to care for his late mother can be viewed retrospectively as temporary and excusable based on recent appellate precedent which expanded the ambit of Rent Stabilization Code (9 NYCRR) §2523.5 (b)(excused temporary absences from a primary residence due to military service, hospitalization, etc.) to foreclose an eviction of a tenant from the claimed regulated primary residence if the temporary relocation was necessary to care for an infirm parent (see 542 W. 14th St. LLC v Lee, 66 AD3d 18, 21 [2008]).

What the trial court and majority overlook is the bigger evidentiary picture (see generally 615 Co. v Mikesha, 75 NY2d 987 [1990]), essentially undisputed on this record, namely, based on the proven statutory and other evidentiary factors sui generis to this case, tenant continued to metaphorically sever the substantial nexus cord for another two years by intentionally breaching an agreed-to contractual commitment unambiguously set forth in the 2007 so-ordered stipulation of settlement to relocate back to his NYC Apt when parental care became moot.[FN2]


Despite signing the 2007 renewal lease, tenant intentionally chose to remain at the Clarence NY residence for the 2007-2009 period and the evidentiary factors establishing a substantial nexus to the Clarence NY residence became even stronger. Ineluctably, tenant's time upstate was spent respectively winding up the estates of his late mother and aunt, overseeing his family-owned investment property (and even staying in one of the vacant apartments on occasion) and actually performing major repairs to the Clarence NY residence to maximize its sale value which proved financially successful. Tenant could have easily arranged for others to "take care of business," but ostensibly chose to be hands-on to put more money in his and his [*5]siblings' pockets. His decision made good business sense, but must be viewed as fatal to his quest to hold onto the NYC Apt he intentionally chose to continually absent himself from during the 2007-2009 period. Contrary to the trial court and majority viewpoints, tenant's explanations for continuing to remain at the Clarence NY residence after his late mother's death can be deemed neither temporary, excusable nor justifiable as "reasonable grounds" under Rent Stabilization Code (9 NYCRR) §2523.5(b)'s safe harbor provision. Tenant's physical relocation back to the NYC Apt after being served with the 2009 non-renewal notice, his resurrection of long abandoned paper trails to his NYC Apt and his testimony of undocumented medical conditions to bolster his inexcusable absence from the NYC Apt are all legally insufficient to rebut landlord's prima facie case (see 1568-1572 Third Ave. LLC v Beachley, 50 Misc 3d 140[A], 2016 NY Slip Op 50170[U] [App Term, 1st Dept. 2016]). In my opinion, a fair interpretation of the evidence leads to the only conclusion that during the 2007-2009 period, tenant no longer used the NYC Apt as his primary residence (see 409-411 Sixth St., LLC v Mogi, 22 NY3d 875 [2013]). Thus, I would reverse, reinstate the holdover petition and grant a judgment of possession to landlord.

THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.

Decision Date: April 26, 2016



Footnotes

Footnote 1:See Golub v Frank, 65 NY2d 900 (1985) (a notice of a landlord's intent not to renew a rent stabilized tenant's lease during a prescribed "window" period based on nonprimary residence grounds.

Footnote 2:See Mill Rock Plaza Assoc. v Lively, 224 AD2d 301 (1996), which involved a so-ordered stipulation of settlement between a rent stabilized tenant and landlord to resolve a chronic non-payment holdover proceeding and oft-cited for the well-settled principle that "[s]trict enforcement of the parties' stipulation . . . is warranted based upon the principle that parties to a civil dispute chart their own litigation course. . ."