■ PLATO GENERAL CONSTRUCTION CORP./EMCO TECH CONSTRUCTION CORP., JV, LLC, Respondent-Appellant, v DORMITORY AUTHORITY OF STATE OF NEW YORK, Appellant-Respondent. Additional Counterclaim Defendants. (And Another Title.) [932 NYS2d 504]—

The plaintiff commenced this action to recover damages for delays in the construction of the Brooklyn College Library, which involved the gut renovation of two existing buildings and construction of an addition. The defendant, Dormitory Authority of the State of New York (hereinafter DASNY), as agent for the owner, City University of New York (hereinafter CUNY), entered into a contract with Turner Construction Company (hereinafter Turner), which is not a party to this action, whereby Turner agreed to act as construction manager, "[e]xpedite and coordinate the work of all Contractors," and prepare a schedule for the project.

On May 20, 1999, DASNY entered into a contract with the plaintiff, Plato General Construction Corp./EMCO Tech Construction Corp. (hereinafter Plato), as prime general contractor, to perform general construction work for

$19,902,000. The contract between DASNY and Plato set the date of completion as March 20, 2001, and required Plato to pay liquidated damages of $1,000 per day for "each and every day that [Plato] shall be in default after the above time of completion."

Pursuant to the "General Requirements" of the contract, the owner's agent, DASNY, was required to provide a "Critical Path Method" (hereinafter CPM) schedule, but Plato was obligated to cooperate with Turner in the development, implementation, and updating of the CPM schedule. Section 13.01(A) of the "General Conditions" of the contract provided: "During the progress of the Work, other contractors may be engaged in performing work. The Contractor [Plato] shall coordinate the Contractor's Work with the work of other contractors in such a manner as the Owner may direct."

Section 11.02 of the "General Conditions" contained a no-damages-for-delay clause which stated: "No claims for increased costs, charges, expenses or damages of any kind shall be made by the Contractor against the Owner for any delays or hindrances from any cause whatsoever; provided that the Owner, in the Owner's discretion, may compensate the Contractor for any said delays by extending the time for completion of the Work as specified in the Contract." Section 13.01(D) provided: "Should the Contractor sustain any damage through any act or omission of any other contractor having a contract with the Owner or through any act or omission of any Subcontractor of said other contractor, the Contractor shall have no claim against the Owner for said damage." Section 20.15 provided that Plato could not cancel the contract based upon DASNY's breach thereof, and waived "any and all rights and remedies to which" Plato "might otherwise be or become entitled to because of any wrongful act or omission" of DASNY, except Plato's right to damages. Provisions were made in the contract for changes and extra work.

In May 1999 Turner provided a schedule to Plato. Plato was to review and make any necessary changes in the schedule. Plato provided its CPM schedule on June 10, 1999.

Delays in the project were attributed to a number of causes. Consolidated Edison Company (hereinafter Con Edison) was installing "chiller lines" to run alongside the site; installation was to take 30 days, but was not completed for six months, interfering with demolition and construction for at least some of that period. Although the contract provided that Plato would have "[c]omplete access to the site after June 1999," the library was not completely vacated until October 5, 1999. The contract

for heating, ventilation, and air conditioning (hereinafter HVAC) was not awarded until August 19, 1999, but the selected HVAC contractor, Precision Mechanical, Inc. (hereinafter Precision), was removed from the project on December 6, 1999, by mutual agreement, because it could not meet deadlines or provide a schedule for its portion of the project. Precision was replaced in January 2000 with Roy Kay, Inc. (hereinafter RKI).

RKI had to provide drawings redesigning the duct work system because the original design based upon DASNY's engineer's drawings was not sufficient to maintain sufficient airflow through the buildings and was not field-verified as to the height of existing beams. Plato claimed that the plans prepared by DASNY's architect were also defective for failing to identify all of the asbestos in the walls, resulting in additional asbestos abatement work which delayed demolition.

Completion of the project was delayed by Plato's failure to complete brickwork in a timely manner, as well as the fact that Plato's subcontractors would not or could not complete their work, requiring Plato to perform much of the interior finishing work itself. Occupancy of the library was not turned over to Brooklyn College until August 28, 2002, 526 days after the contract completion date of March 20, 2001.

Plato commenced this action on March 30, 2005, to recover, inter alia, $15,834.257.41. DASNY counterclaimed for liquidated damages of $1,000 per day for 411 days, constituting the period from the March 20, 2001, the date the project originally was to have been completed, until August 28, 2002, the date the project was substantially completed, less a 115-day extension of time granted by DASNY.

After a nonjury trial, the Supreme Court, in a written decision (see *Plato Gen. Constr. Corp. v Dormitory Auth. of the State of N.Y.*, 27 Misc 3d 1226[A], 2010 NY Slip Op 50916[U] [2010]), determined that DASNY could not rely on the no-damages-for-delay clause in the contract, because DASNY had waived that clause. The Supreme Court found, inter alia, that DASNY breached the contract by failing to fulfill its duty of scheduling and coordination of the work, failing to have an HVAC contractor in place at the beginning of the project, failing to notify the other contractors of a redesign of the HVAC system, and failing to remove all books from the library, delaying full access to the site until October 1999. The Supreme Court found that uncontemplated delays were incurred, among other things, by Con Edison's excavation for the chiller line, and the fact that additional asbestos was found in the walls. However, the Supreme Court also found that Plato was responsible for some

of the delay because of errors in masonry work, and the fact that virtually none of its subcontractors completed their tasks. Based upon its findings, the Supreme Court found that DASNY was responsible for 66% of the 526-day delay from March 20, 2001, until August 28, 2002, and Plato was responsible for the remaining 34% of that delay (179 days).

Since this case involves a nonjury trial, the authority of the Appellate Division "is as broad as that of the trial court . . . and . . . it may render the judgment it finds warranted by the facts, taking into account in a close case 'the fact that the trial judge had the advantage of seeing the witnesses' " (*Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983], quoting *York Mtge. Corp. v Clotar Constr. Corp.*, 254 NY 128, 133-134 [1930]; *see DePaula v State of New York*, 82 AD3d 827 [2011]; *Bryant v State of New York*, 77 AD3d 875, 875-876 [2010]). The question of whether the no-damages-for-delay clause is applicable here involves questions of law and fact.

The purpose of a no-damages-for-delay clause is to "extend acceptability to a range of unreasonable delay" by the contractee (in this case DASNY) (*see Kalisch-Jarcho, Inc. v City of New York*, 58 NY2d 377, 384 [1983]). However, as is true of contracts generally, implicit in such a provision is "the obligation of fair dealing" (*id.*). In *Corinno Civetta Constr. Corp. v City of New York* (67 NY2d 297, 309 [1986]), the Court of Appeals ruled that notwithstanding such a clause, damages may be recovered for "(1) delays caused by the contractee's bad faith or its willful, malicious, or grossly negligent conduct, (2) uncontemplated delays, (3) delays so unreasonable that they constitute an intentional abandonment of the contract by the contractee, and (4) delays resulting from the contractee's breach of a fundamental obligation of the contract." However, the clause exonerates the defendant for delays caused by inept administration or poor planning (*see Blue Water Envtl., Inc. v Incorporated Vil. of Bayville, N.Y.*, 44 AD3d 807, 810 [2007]; *Commercial Elec. Contrs., Inc. v Pavarini Constr. Co., Inc.*, 50 AD3d 316, 317-318 [2008]; *T.J.D. Constr. Co. v City of New York*, 295 AD2d 180 [2002]), a "failure of performance" by the defendant "in ordinary, garden variety ways" (*Harrison & Burrowes Bridge Constructors, Inc. v State of New York*, 42 AD3d 779, 782 [2007] [internal quotation marks omitted]), or a failure of performance resulting from ordinary negligence, as distinguished from gross negligence (*see Buckley & Co. v City of New York*, 121 AD2d 933, 934 [1986]).

In the instant case, there is no evidence that DASNY

intentionally abandoned the contract. However, Plato contended that DASNY, through its construction manager, Turner, acted in bad faith in a grossly negligent manner, breached the contract, and caused delays which were not contemplated by Plato when it entered into the contract.

The contract between Plato and DASNY required DASNY to provide a CPM schedule, but also required Plato to cooperate in the development, implementation, and updating of that schedule. The evidence established that DASNY, through Turner, provided a CPM schedule on at least two occasions, one in May 1999, and another on February 9, 2000. Plato's primary witness at the trial acknowledged that the schedule was updated four or five times but, in his opinion, the schedule was useless. He also acknowledged that Turner conducted weekly meetings of the prime contractors, the architect, and representatives from DASNY and Brooklyn College. According to DASNY, updating the CPM schedule was abandoned in favor of two-week schedules, referred to as "lookaheads," because the updates were always behind what was actually happening as a result of Plato's deadlines not being met. Such conduct did not constitute a fundamental breach of contract by DASNY (*see Dart Mech. Corp. v City of New York*, 68 AD3d 664, 664 [2009]). At worst, DASNY could be charged with poor planning and administration, which would not render inapplicable the no-damages-for-delay clause.

The contract specifically provided that Plato could not sue the owner for damages resulting from the acts or omissions of other contractors. Further, since the contract provided for change orders, extra work, and acts or omissions by other contractors, such delays were, on their face, contemplated by the parties at the time they entered into the contract (*id.*; *Commercial Elec. Contrs., Inc. v Pavarini Constr. Co., Inc.*, 50 AD3d at 318; *Blau Mech. Corp. v City of New York*, 158 AD2d 373, 375 [1990]). Further, the "other prime contractors' inaction, faulty performance and defaults under their contracts" are delays "precisely within the contemplation" of exculpatory clauses (*Gottlieb Contr. v City of New York*, 86 AD2d 588, 589 [1982], *affd* 58 NY2d 1051 [1983]). We further note that Plato's original schedule, submitted to Turner, provided for the performance of brickwork between January 2000 and May 2000. Although some of the brickwork was performed in the winter of 2001, a year later, the fact that such work would be performed during the winter was contemplated by the parties.

Contrary to the trial court's conclusion, section 20.15 of the contract, which provided that Plato could not cancel the contract based upon DASNY's breach thereof, and waived "any and all

rights and remedies" except damages, was not inconsistent with the no-damages-for-delay clause. Under New York law, Plato only had a right to cancel the contract if DASNY committed a substantial and fundamental breach thereof (*see Callanan v Keeseville, Ausable Chasm & Lake Champlain R.R. Co.*, 199 NY 268, 284 [1910]; *WILJEFF, LLC v United Realty Mgt. Corp.*, 82 AD3d 1616, 1617 [2011]; *Mortgage Elec. Registration Sys., Inc. v Maniscalco*, 46 AD3d 1279, 1281 [2007]; *RR Chester, LLC v Arlington Bldg. Corp.*, 22 AD3d 652, 654 [2005]), which would also constitute an exception to the no-damages-for-delay clause (*see Corinno Civetta Constr. Corp. v City of New York*, 67 NY2d 297, 309 [1986]). However, since there was no fundamental breach of contract by DASNY and, therefore no grounds for Plato to cancel the contract, section 20.15 was not applicable to this dispute.

The change orders granting Plato compensation for 115 days of delay resulting, inter alia, from a delay in awarding the HVAC contract, moving out the library books, demolition of an existing steam tunnel which required rerouting the telephone lines, abating additional asbestos, and delays caused by the chiller-line project, constituted a waiver of the no-damages-for-delay clause with respect to the delays specified in those change orders, on the ground that those change orders explicitly stated that there would be additional adjustments "upon conclusion of negotiations of the time impacts and verification of actual costs," and contained no reservation of rights pursuant to the no-damages-for-delay clause (*see Eldor Contr. Corp. v County of Nassau*, 6 AD3d 654, 655 [2004]; *cf. Travelers Cas. & Sur. Co. v Dormitory Auth.-State of N.Y.*, 735 F Supp 2d 42, 69 [2010]). However, since a waiver is the voluntary and intentional relinquishment of a known right, which is not created by negligence, oversight, or silence (*see Golfo v Kycia Assoc., Inc.*, 45 AD3d 531, 532 [2007]), a waiver of the no-damages-for-delay clause for delays for other reasons not mentioned in those change orders may not be inferred.

"When claims are made for damages for delay, plaintiff must show that defendant was responsible for the delay; that these delays caused delay in completion of the contract (eliminating overlapping or duplication of delays); that the plaintiff suffered damages as a result of these delays; and plaintiff must furnish some rational basis for the court to estimate those damages, although obviously a precise measure is neither possible nor required" (*Manshul Constr. Corp. v Dormitory Auth. of New York*, 79 AD2d 383, 387 [1981]). Requiring proof that "these delays caused delay in completion of the contract (eliminating

overlapping or duplication of delays)" eliminates damages for "concurrent" delays (*Helena Assoc., LLC v EFCO Corp.*, 2008 WL 2117621, *4, 2008 US Dist LEXIS 39977, *9-10 [SD NY 2008]; *William F. Klingensmith, Inc. v United States*, 731 F2d 805, 809 [1984]). Concurrent delays occur "where both parties are responsible for the same period of delay" (*R.P. Wallace, Inc. v United States*, 63 Fed Cl 402, 410 [2004]). Under such circumstances, recovery of delay damages is precluded, since the defendant is not the "sole proximate cause of the delay" (*ADP Marshall, Inc. v Noresco, LLC*, 710 F Supp 2d 197, 222 [2010] [internal quotation marks omitted]; *see Essex Electro Engineers, Inc. v Danzig*, 224 F3d 1283, 1295 [2000]).

Plato failed to establish that the delays specified in the two change orders which waived the no-damages-for-delay clause delayed completion of the project. When those delays occurred, the project was plagued by delays from a number of sources. DASNY's expert noted that there was a delay in August 1999 because the calculations for the metal sheeting (used to hold excavated earth in place) submitted by Plato had to be redone and approved. DASNY was changing its HVAC contractor, but Plato also had to change its concrete subcontractor. The replacement concrete subcontractor's equipment was only sufficient to build the west side of the addition first, followed by the east side, which was contrary to the original plan, causing an additional delay relating to the rental of additional equipment.

There was no facade work, because Plato could not obtain approval of the brick mock-up in a timely manner, which meant that the windows could not be installed. Interior work was commenced without completion of the facade, but no finish work sensitive to weather could be performed. The exterior facade was not completed until August 2001. In view of the limited waiver of the no-damages-for-delay clause, and the extensive evidence of concurrent delay, the award of delay damages to Plato was not warranted by the facts, and must be set aside.

The trial court's conclusion that DASNY is entitled to liquidated damages for 179 days is warranted by the credible evidence. Since there has been no finding by the Supreme Court as to when DASNY's cause of action for liquidated damages accrued, the matter must be remitted to the Supreme Court, Kings County, for a determination of prejudgment interest.

The parties' remaining contentions are without merit, or need not be addressed in light of our determination. Dillon, J.P., Balkin, Eng and Cohen, JJ., concur.