[12 NYS3d 160]

In the Matter of GEORGETOWN UNSOLD SHARES, LLC, Appellant, v ARLENE LEDET, Also Known as ARLENE SOLKOFF, Respondent, et al., Respondents.

Second Department, June 17, 2015

APPEARANCES OF COUNSEL

*Friedman, Harfenist, Kraut & Perlstein, LLP*, Lake Success (*Neil Torczyner* of counsel), for appellant.

*Donna Dougherty*, Rego Park (*Daniel Nkansah-Siriboe* of counsel), for respondent.

**OPINION OF THE COURT**

Cohen, J.

Introduction

On this appeal, we are asked to determine whether a landlord's acceptance of unsolicited rent in the "window period" between the expiration date of a lease and the commencement of a holdover proceeding nullifies a landlord's previous service of a notice of intention not to renew the lease. We conclude that the acceptance of unsolicited rent in these circumstances does not, by itself, demonstrate an intentional waiver of a previously served notice of intention not to renew the lease and, thus, does not vitiate that notice.

Factual and Procedural Background

The respondent Arlene Ledet, also known as Arlene Solkoff, has been in continual possession of a rent-stabilized apartment in Queens owned by the petitioner, Georgetown Unsold Shares, LLC, since 1971. On January 5, 2010, Ledet was personally served with a notice of the petitioner's intention not to renew the lease for the rent-stabilized apartment when it expired on April 30, 2010 (hereinafter the nonrenewal notice). The bases

for service of the nonrenewal notice were that the apartment was not Ledet's primary residence, that she had not been seen at the residence for several years, and that unknown individuals currently were residing there without the petitioner's permission. The nonrenewal notice additionally advised Ledet that, if she failed to vacate the apartment by April 30, 2010, the petitioner would commence summary proceedings against her to take possession of the apartment.

Ledet did not vacate the apartment as demanded, and instead submitted unsolicited rent checks to the petitioner on May 1, 2010, and June 1, 2010. It is undisputed that both checks were received by the petitioner's managing agent, who deposited them on behalf of the petitioner. The petitioner then commenced the instant summary holdover proceeding, and moved to compel disclosure of, inter alia, Ledet's voter and automobile registration information, which it believed would indicate that she was a resident of Florida. Ledet cross-moved to dismiss the petition on the ground that the petitioner's acceptance of her May and June 2010 rent checks vitiated the nonrenewal notice by virtue of the doctrine of waiver, arguing that since the notice was nullified, the petitioner had failed to fulfill a condition precedent to the commencement of a holdover proceeding under the New York City Rent Stabilization Law of 1969 (Administrative Code of City of NY §§ 26-501–26-520) and the Rent Stabilization Code (9 NYCRR 2520.1–2531.9). Ledet also argued that the petitioner was not entitled to discovery solely on the basis of an attorney's affirmation because the attorney did not have personal knowledge of the relevant facts.

The petitioner opposed the cross motion, claiming that it did not intend to renew Ledet's lease by accepting the May and June 2010 rent checks. In support of its position, the petitioner submitted an affidavit from a representative of its managing agent, who averred that she deposited Ledet's May and June 2010 checks "in error" in the belief that they represented use and occupancy charges.

In an order dated January 3, 2012, the Civil Court denied the petitioner's motion for leave to conduct disclosure and to compel a response to discovery requests, granted Ledet's cross motion, and directed the dismissal of the petition, concluding that the petitioner's acceptance of rent for May and June 2010 constituted a waiver of the petitioner's right to proceed by way of a holdover proceeding.

In an order dated May 3, 2012, the Appellate Term of the Supreme Court for the Second, Eleventh, and Thirteenth

Judicial Districts affirmed the order of the Civil Court. The petitioner appeals, by permission of the Appellate Term. We reverse.

Analysis

Following World War II, New Yorkers, both within and outside of the City of New York, faced a profound housing shortage. Seeking to address the shortage, legislative bodies in the State of New York enacted laws providing for rent control (*see* Emergency Housing Rent Control Law [L 1946, ch 274, as amended (rent control outside New York City)]; Local Emergency Housing Rent Control Act [L 1962, ch 21, as amended (rent control within New York City)]; NY City Rent and Rehabilitation Law [Administrative Code of City of NY §§ 26-401 *et seq.* (rent control within New York City)]). When the housing shortage continued, legislative bodies created a separate and distinct system known as rent stabilization, enacted first by the New York City Council (*see* New York City Rent Stabilization Law of 1969 [Administrative Code of City of NY §§ 26-501 *et seq.*, as amended (rent stabilization within New York City)]), followed by the New York State Legislature (*see* Emergency Tenant Protection Act of 1974 § 4, as added by L 1974, ch 576, § 4, as amended [rent stabilization outside New York City]). The New York City Rent Stabilization Law of 1969 was enacted "to prevent speculative, unwarranted and abnormal increases in rents . . . which creates a special hardship to persons . . . occupying rental housing" (Findings and Declaration of Emergency, Local Law No. 16 [1969] of New York City, now codified at Administrative Code of City of NY § 26-501). In promulgating a rent stabilization regime, as opposed to rent control, legislators sought to balance the interests of landlords and of those tenants who occupy their apartments as primary residences (*see Manocherian v Lenox Hill Hosp.*, 84 NY2d 385, 389-390 [1994]). To that end, in 1974 the New York City Council exempted from rent stabilization apartments which are "not occupied by the tenant . . . as his or her primary residence, as determined by a court of competent jurisdiction" (Administrative Code of City of NY § 26-504 [a] [1] [f]).

> "The purpose of this law is to alleviate the shortage of housing in New York City by returning underutilized apartments to the marketplace for residents who need them . . . It is axiomatic that residents of New York City who may be in dire need of affordable housing should be able to obtain such

housing before occupants who reside elsewhere and misuse rent-stabilized properties as, for example, warehouses, pieds-à-terre for occasional visits or for other more nefarious purposes" (*Katz Park Ave. Corp. v Jagger*, 11 NY3d 314, 318 [2008, Ciparick, J., concurring]).

Thus, under the New York City Rent Stabilization Law of 1969, and the regulations promulgated by the New York State Division of Housing and Community Renewal to enforce that law, known as the Rent Stabilization Code (*see* Administrative Code of City of NY §§ 26-511 [b]; 26-518 [a]; 9 NYCRR 2520.1–2531.9), a tenant who continues to pay rent may not be denied a renewal lease or be evicted from a rent-stabilized apartment except when, inter alia, the tenant fails to occupy the subject premises as his or her primary residence (*see* 9 NYCRR 2524.1 [a]; 2524.4 [c]). No tenant may be removed or evicted from a rent-stabilized apartment, except where the ground for removal or eviction is nonpayment of rent, unless and until the landlord gives at least 90 but not more than 150 days' written notice prior to the expiration of the lease term (*see* 9 NYCRR 2524.2 [a], [c] [2]). The landlord also must give at least 30 days' notice of its intention to commence an action or proceeding to evict the tenant on the basis that the tenant does not occupy the subject premises as his or her primary residence (*see* 9 NYCRR 2524.4 [c]).

The lease to Ledet's rent-stabilized apartment was due to expire on April 30, 2010. On January 5, 2010, or 115 days prior to that date, the petitioner personally served Ledet with a non-renewal notice that also advised her of its intent to recover possession of her apartment if she did not vacate it. Ledet does not dispute that this combined predicate notice, sometimes referred to as a *Golub* notice (*see Golub v Frank*, 65 NY2d 900 [1985]), was timely served. Rather, she continues to maintain that the receipt and deposit of her two unsolicited rent checks after April 30, 2010 constituted a waiver which vitiated the January 5, 2010 nonrenewal notice.

The specific issue of whether acceptance of unsolicited rent payments after the expiration of a lease for a rent-stabilized apartment, pursuant to a *Golub* notice, vitiates a landlord's nonrenewal notice is one of first impression in this Court.

"A waiver is the voluntary abandonment or relinquishment of a known right" (*Jefpaul Garage Corp. v Presbyterian Hosp. in City of N.Y.*, 61 NY2d 442, 446 [1984]). A known right may

not be waived except when there is an intention to do so (*see Jefpaul Garage Corp. v Presbyterian Hosp. in City of N.Y.*, 61 NY2d at 446). "While waiver may be inferred from the acceptance of rent in some circumstances, it may not be inferred, and certainly not as a matter of law, to frustrate the reasonable expectations of the parties embodied in a lease when they have expressly agreed otherwise" (*id.* at 446). A waiver occurs when there is "such conduct or failure to act as to evince an intent not to claim the purported advantage" (*Hadden v Consolidated Edison Co. of N.Y.*, 45 NY2d 466, 469 [1978]).

The issue of whether the acceptance of rent could constitute a waiver was among those considered by the Court of Appeals in *Sullivan v Brevard Assoc.* (66 NY2d 489 [1985]). In that case, the tenant of record moved out of the rent-stabilized apartment in Manhattan that she was sharing with her sister. The sister continued to reside in the apartment, and pay rent. The sister subsequently commenced an action seeking a judgment declaring that she was a tenant properly in possession of the premises, which would entitle her to a renewal lease. The Court of Appeals concluded that the sister was not a tenant entitled to renewal of the lease under any law governing rent-stabilized apartments (*id.* at 495). The Court of Appeals further rejected the sister's argument that the landlord had waived its right to contest her continued occupancy of the apartment by accepting her rent checks, pointing out that there was no "evidence that, by simply accepting her checks, [the landlord] intended to relinquish a known right" (*id.*).

With regard to the specific issue raised on this appeal, several courts have held that a landlord's acceptance of rent in the "window period" between the expiration date of the lease and the commencement of the holdover proceeding does not unmistakably manifest, as a matter of law, a landlord's intent to relinquish its rights to pursue a "nonprimary residence" holdover claim (*see Goldman v Becraft*, 6 Misc 3d 135[A], 2001 NY Slip Op 50152[U] [App Term, 1st Dept 2001]; *West Waverly Equities Group v Lieff*, 190 Misc 2d 280, 281 [App Term, 1st Dept 2001]). Indeed, the Appellate Term for the Second and Eleventh Judicial Districts has previously rejected the proposition that the acceptance of rent after the expiration of the lease vitiates a notice of intention not to renew under the Rent Stabilization Code (*see Baginski v Lysiak*, 154 Misc 2d 275, 276-277 [App Term, 2d Dept, 2d & 11th Jud Dists 1992]). In *Baginski v Lysiak*, the court concluded that the acceptance of

rent after service of a nonrenewal notice is "not so inconsistent with the continuation of an intention on the part of [the] landlord not to renew the lease as to require that it be deemed a waiver of the notice of that intention" (*id.* at 277). The court also reasoned that, while a tenant could not be required to surrender possession of an apartment until he or she has had an opportunity to challenge the landlord's claim in court, the landlord could not be denied the right to collect rent prior to the commencement of a proceeding against the tenant (*see id.*).

We similarly conclude that, pursuant to the New York City Rent Stabilization Law of 1969 and the Rent Stabilization Code, a landlord's acceptance of unsolicited rent after the expiration of a lease does not, standing alone, amount to a voluntary relinquishment of the right to contest a tenant's possession on the basis that the leasehold is not the tenant's primary residence. Since the very essence of a waiver is the intentional relinquishment of a known right, a waiver cannot be created via negligence, oversight, or thoughtlessness (*see Plato Gen. Constr. Corp. / EMCO Tech Constr. Corp., JV, LLC v Dormitory Auth. of State of N.Y.*, 89 AD3d 819, 825 [2011]; *Golfo v Kycia Assoc., Inc.*, 45 AD3d 531, 532 [2007]; *Peck v Peck*, 232 AD2d 540, 540 [1996]).

Here, the record is devoid of evidence that the petitioner intentionally relinquished its right to proceed on its nonrenewal notice merely by accepting rent checks after the expiration date of the lease. There is no evidence that the petitioner either affirmatively acted in order to solicit Ledet's rent checks after service of the nonrenewal notice (*cf. Metropolitan Ins. / Annuity Co. v Rowinski*, 8 Misc 3d 477, 479 [Civ Ct, NY County 2004]), or that the petitioner gave Ledet the impression that it intended to reinstate her tenancy after it served the nonrenewal notice (*cf. New York City Hous. Auth. v McNeil*, 17 Misc 3d 1130[A], 2007 NY Slip Op 52208[U], *3-4 [Civ Ct, Kings County 2007]). There was no tender of a renewal lease or billing at an increased rent, hallmarks that the petitioner in fact intended to renew the lease. Moreover, the representative of the petitioner's managing agent averred in her affidavit that she deposited Ledet's checks in the mistaken belief that they represented use and occupancy payments. The acceptance of rent under these circumstances does not, by itself, constitute unequivocal evidence of a landlord's intent to waive its right to proceed against a tenant. To the extent that the Appellate Division, First Department, reached a contrary conclusion in *205*

*E. 78th St. Assoc. v Cassidy* (192 AD2d 479 [1993]), we do not find its rationale persuasive. In that case, the First Department apparently gave considerable weight to the fact that the landlord did not correct its claimed "inadvertent" acceptance of a single rent payment by returning the payment. However, we do not agree that a landlord must return an unsolicited payment, and thereby allow the tenant to occupy the apartment at no cost, in order to retain its right to proceed on a timely served nonrenewal notice. Accordingly, we conclude that, by accepting Ledet's rent checks, the petitioner's managing agent did not nullify the petitioner's previous service of its nonrenewal notice.

We therefore conclude that the Appellate Term erred in implicitly finding that the petitioner's acceptance of rent checks from Ledet nullified the nonrenewal notice (*see Goldman v Becraft*, 6 Misc 3d 135[A], 2001 NY Slip Op 50152[U] [App Term, 1st Dept 2001]; *West Waverly Equities Group v Lieff*, 190 Misc 2d at 281; *Baginski v Lysiak*, 154 Misc 2d at 276-277; *see also Beacon 109 223-225 LLC v Mon Sheng Wu*, 32 Misc 3d 140[A], 2011 NY Slip Op 51570[U] [App Term, 1st Dept 2011]; *8 W. 9th St., LLC v Hunter*, 14 Misc 3d 145[A], 2007 NY Slip Op 50428[U] [App Term, 1st Dept 2007]; *Metropolitan Ins. & Annuity Co. v Hartman*, 11 Misc 3d 140[A], 2006 NY Slip Op 50665[U] [App Term, 1st Dept 2006]; *PCV/ST LLC v Finn*, 2003 NY Slip Op 50897[U] [App Term, 1st Dept 2003]).

We now turn to the petitioner's motion for leave to conduct discovery in this holdover proceeding (*see* CPLR 408), and thereupon to compel Ledet to produce certain documents. In a summary proceeding in which a petitioner moves for leave to conduct discovery under CPLR 408,

> "the pertinent criteria for consideration include, inter alia: (1) whether the petitioner has asserted facts to establish a cause of action; (2) whether a need to determine information directly related to the cause of action has been demonstrated; (3) whether the requested disclosure is carefully tailored so as to clarify the disputed facts; (4) whether any prejudice will result; and (5) whether the court can fashion or condition its order to diminish or alleviate any resulting prejudice" (*Matter of Lonray, Inc. v Newhouse*, 229 AD2d 440, 440-441 [1996]; *see New York Univ. v Farkas*, 121 Misc 2d 643 [Civ Ct, NY County 1983]).

The petitioner here has asserted facts to establish the facial validity of its cause of action, and has demonstrated a need for discovery, including documentation that purportedly shows that Ledet was registered to vote in Florida and had registered an automobile in Florida, and that Ledet's daughter owned the Florida condominium connected with Ledet's voter and automobile registrations. These documents likely exist under Ledet's control, and her production of those documents in the course of discovery would neither unduly burden nor prejudice her in any way. Additionally, the proposed discovery demands were carefully tailored to obtain information necessary to establish the petitioner's cause of action. Therefore, the petitioner's motion for leave to conduct discovery and thereupon to compel Ledet to produce the requested documents should have been granted.

Accordingly, the order dated May 3, 2012, is reversed, on the law, the order of the Civil Court of the City of New York, Queens County, dated January 3, 2012, is reversed, Ledet's cross motion to dismiss the petition is denied, and the petitioner's motion for leave to conduct discovery and thereupon to compel Ledet to produce the requested documents is granted.

DILLON, J.P., BALKIN and CHAMBERS, JJ., concur.

Ordered that the order dated May 3, 2012, is reversed, on the law, with costs, the order of the Civil Court of the City of New York, Queens County, dated January 3, 2012, is reversed, the cross motion of the respondent Arlene Ledet, also known as Arlene Solkoff, to dismiss the petition is denied, and the petitioner's motion for leave to conduct discovery and thereupon to compel Ledet to produce the requested documents is granted.