■ Tougher Industries, Inc., Appellant, v Dormitory Authority of the State of New York, Respondent. (And a Third-Party Action.) [15 NYS3d 262]—

Garry, J.P. Appeal from an order of the Supreme Court (Platkin, J.), entered March 18, 2014 in Albany County, which, among other things, granted defendant's motion for partial summary judgment dismissing the complaint.

In April 2001, plaintiff contracted with defendant to be the prime contractor in charge of installation of heat, ventilation and air conditioning (hereinafter HVAC) during a major renovation project at a state psychiatric center. Plaintiff's completion of the work was significantly delayed by a multitude of design errors and other issues. As a result, plaintiff commenced the instant action asserting breach of contract and several other causes of action. Following extensive discovery, defendant moved for partial summary judgment seeking, as relevant here, to dismiss plaintiff's causes of action seeking damages for delay and extra work. Supreme Court granted the motion, finding that these claims were barred by a mandatory notice provision and a no-damages-for-delay clause in the parties' contract. Plaintiff appeals.

As a general rule, "contract clauses exculpating the contractee from liability to the contractor for damages resulting from delays in performance of the contract work" are valid and enforceable (*Harrison & Burrowes Bridge Constructors, Inc. v State of New York*, 42 AD3d 779, 782 [2007]; *see Kalisch-Jarcho, Inc. v City of New York*, 58 NY2d 377, 384 [1983]). However, even where the contract contains such a clause, there are several recognized exceptions. As relevant here, a contractor may still recover for "delays caused by the contractee's bad faith or its willful, malicious, or grossly negligent conduct" (*Corinno Civetta Constr. Corp. v City of New York*, 67 NY2d 297, 309

[1986]; *accord Plato Gen. Constr. Corp./EMCO Tech Constr. Corp., JV, LLC v Dormitory Auth. of State of N.Y.*, 89 AD3d 819, 823 [2011], *lv denied* 19 NY3d 803 [2012]; *Clifford R. Gray, Inc. v City School Dist. of Albany*, 277 AD2d 843, 844 [2000]). A defendant seeking summary judgment dismissing a claim for delay damages "bears the initial burden of demonstrating prima facie that none of the exceptions to the 'damages for delay' clause are present" (*Blue Water Envtl., Inc. v Incorporated Vil. of Bayville, N.Y.*, 44 AD3d 807, 810 [2007], *lv denied* 10 NY3d 713 [2008]; *see Fowler, Rodriguez, Kingsmill, Flint, Gray & Chalos, LLP v Island Props., LLC*, 38 AD3d 831, 833 [2007]). Here, the parties do not dispute that defendant met this initial burden; rather, plaintiff argues that it successfully demonstrated the existence of triable issues of fact as to whether defendant's conduct constituted gross negligence or bad faith. We disagree, and find no error in Supreme Court's grant of summary judgment.

Gross negligence differs in kind from claims of ordinary negligence, and requires a showing of "conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing" (*Soja v Keystone Trozze, LLC*, 106 AD3d 1168, 1170 [2013] [internal quotation marks and citations omitted]; *accord Finsel v Wachala*, 79 AD3d 1402, 1404 [2010]; *see Abacus Fed. Sav. Bank v ADT Sec. Servs., Inc.*, 18 NY3d 675, 683 [2012]). Here, plaintiff claims that defendant was grossly negligent in permitting plaintiff to bid on the project when it knew of and failed to disclose defects in the HVAC design that would necessarily cause problems and delays. Plaintiff relies upon the testimony of an engineer who was employed by defendant to monitor the adequacy of the HVAC design work being performed by plaintiff's consultant, Crandell Associates, Architects and Facility Planners, P.C. According to plaintiff, reports completed by defendant's engineer at various stages of Crandell's design work reveal that he identified, but nonetheless recklessly failed to address, several potential design flaws, including spatial limitations that could—and later did—interfere with fitting HVAC ducts into interstitial ceiling spaces. However, the engineer testified that his role was limited to "identify[ing] the deficienc[ies]," rather than "mandat[ing] recommendations to [the] consultants." Further, his reports reveal that he relied on representations by Crandell's subconsultant that it would investigate the issues that he had identified.

Even if the engineer or defendant had a duty to follow up on these representations and ensure that the design flaws were

corrected, their failure to do so cannot be said to meet the standard of "evinc[ing] a reckless disregard for [plaintiff's] rights" (*Soja v Keystone Trozze, LLC*, 106 AD3d at 1170). This is particularly true because an additional provision of the contract expressly charged plaintiff with the responsibility of examining the project site and satisfying itself "as to the nature and materials likely to be encountered, . . . the general and local conditions, and all other materials or items which may affect the [w]ork." Thus, plaintiff failed to demonstrate that the deficiencies in question were more than "design defects based on faulty architectural drawings [which were] 'precisely within the contemplation of the [no-damages-for-delay] clause[ ],' " and the proof did not give rise to issues of fact as to defendant's gross negligence (*LoDuca Assoc., Inc. v PMS Constr. Mgt. Corp.*, 91 AD3d 485, 486 [2012], quoting *Gottlieb Contr. v City of New York*, 86 AD2d 588, 589 [1982], *affd* 58 NY2d 1051 [1983]).

Next, plaintiff contends that defendant's efforts to schedule and coordinate the work of the numerous contractors involved in the project were so incompetent that they evinced a reckless disregard for the delays that were bound to result. As plaintiff contends, the contract required defendant to facilitate the preparation of a "critical path method" work schedule that was to be released shortly after construction began. This schedule was not implemented until five months after construction started, and it ultimately proved to be so inadequate that defendant abandoned it. The record reveals that significant delays resulted from these failures. However, it also reveals that it was the contractual responsibility of the general contractor, not defendant, to finalize and update the schedule, and that defendant made proactive efforts to coordinate the work, including holding weekly progress meetings for purposes of scheduling and coordination. The contract contains a provision expressly exculpating defendant from liability resulting from "delays attendant upon any construction schedule approved by [defendant]," in addition to the no-damages-for-delay clause. Given the scope of the contract's several exculpatory clauses, defendant's scheduling failures demonstrate, at worst, "inept administration or poor planning" and do not constitute gross negligence (*Commercial Elec. Contrs., Inc. v Pavarini Constr. Co., Inc.*, 50 AD3d 316, 318 [2008]; *see Plato Gen. Constr. Corp./ EMCO Tech Constr. Corp., JV, LLC v Dormitory Auth. of State of N.Y.*, 89 AD3d at 823; *T.J.D. Constr. Co. v City of New York*, 295 AD2d 180, 180 [2002]).

We reject plaintiff's contention that the cumulative effect of

defendant's errors is sufficient to demonstrate gross negligence. Gross negligence cannot be demonstrated merely by accumulating a sufficient number of "garden variety" failures (*Corinno Civetta Constr. Corp. v City of New York*, 67 NY2d at 313). Here, each of the alleged errors has been shown to fall short of gross negligence and to be within the contemplation of the contract's exculpatory clauses (*see Bovis Lend Lease [LMB], Inc. v Lower Manhattan Dev. Corp.*, 108 AD3d 135, 147 [2013]; *Burt Welding & Automotive Repair v U.W. Marx, Inc.*, 272 AD2d 737, 738 [2000]). Thus, regardless of the number of plaintiff's allegations, it has not met its burden to establish that any of defendant's actions "went beyond ordinary negligence and satisfied the gross negligence standard" (*Princetel, LLC v Buckley*, 95 AD3d 855, 856 [2012], *lv dismissed* 20 NY3d 994 [2013]).

Plaintiff also contends that the no-damages-for-delay clause does not bar its claim because of issues of fact as to whether defendant dealt with plaintiff in bad faith. In support of this argument, plaintiff primarily relies upon opinions expressed in a single email sent by an employee of defendant, who later passed away. We agree with Supreme Court that the document was inadmissible as plaintiff failed to lay a foundation for its admission as a business record in accord with the established statutory requirements (*see* CPLR 4518; *State of New York v 158th St. & Riverside Dr. Hous. Co., Inc.*, 100 AD3d 1293, 1297 [2012], *lv denied* 20 NY3d 858 [2013]).[1] The mere fact that the email was originally produced by defendant during discovery does not, as plaintiff contends, alter that requirement. Further, even assuming that the email had been admissible, the statements of its author fell well short of evidencing any "sinister intention" or "dishonest purpose" (*Kalisch-Jarcho, Inc. v City of New York*, 58 NY2d at 385, 385 n 5) on defendant's part. As plaintiff offered no other evidence of bad faith, it has failed to demonstrate a triable issue of fact as to this exception to the no-damages-for-delay clause.[2]

Finally, plaintiff attempts to claim compensation for tasks

---

1. Plaintiff argues that defendant waived this argument by failing to timely object. However, the record reveals that plaintiff did not declare its intention to admit the document as a business record until after defendant objected to its admission on the ground that the email's author was deceased. Defendant objected at its first opportunity when the business record theory was raised.

2. Plaintiff's allegations that defendant manifested bad faith by favoring another contractor at plaintiff's expense constitute nothing more than speculation or examples of "inept administration or poor planning" that, as previously noted, do not constitute gross negligence (*Commercial Elec. Contrs., Inc. v Pavarini Constr. Co., Inc.*, 50 AD3d at 318). The further conten-

that allegedly constituted "extra work" beyond the scope of the parties' contract. However, a provision in the contract required plaintiff to notify defendant that it considered a task to constitute extra work within 15 working days after being ordered to undertake the task or beginning to perform it. Here, plaintiff concedes that it did not notify defendant of this claim until five months after it began performance of the disputed task. Thus, "[d]efendant established its entitlement to summary judgment by submitting proof that [plaintiff] did not comply with the condition precedent" by providing timely notice (*Fahs Constr. Group, Inc. v State of New York*, 123 AD3d 1311, 1311-1312 [2014], *lv denied* 25 NY3d 902 [2015]; *see A.H.A. Gen. Constr. v New York City Hous. Auth.*, 92 NY2d 20, 30-31 [1998]). We reject plaintiff's contention that issues of fact exist as to whether defendant waived the notice provision by allowing contractors to perform work pursuant to change orders before receiving approval as required by another contract provision. Even if defendant did so, plaintiff's submissions demonstrate that it did nothing to identify the work contained in the change orders as extra contractual (*see Fahs Rolston Paving Corp. v County of Chemung*, 43 AD3d 1192, 1194 [2007]). Accordingly, even upon viewing the facts in the light most favorable to plaintiff, the record does not reveal that defendant's actions " 'evince[d] an explicit, unmistakable, and unambiguous waiver' " of the notification requirement (*Fahs Constr. Group, Inc. v State of New York*, 123 AD3d at 1312, quoting *Matter of Chenango Forks Cent. School Dist. v New York State Pub. Empl. Relations Bd.*, 95 AD3d 1479, 1484 [2012], *affd* 21 NY3d 255 [2013]; *see Sicoli & Massaro v Niagara Falls Hous. Auth.*, 281 AD2d 966, 966 [2001]).

Egan Jr., Rose and Lynch, JJ., concur. Ordered that the order is affirmed, without costs.

---

tion that the email constituted a party admission, raised for the first time on appeal, is unpreserved.