Apple Bank v Contemporary Dental Implants Scarsdale LLP (2024 NY Slip Op 51388(U))

[*1]

Apple Bank v Contemporary Dental Implants Scarsdale LLP

2024 NY Slip Op 51388(U)

Decided on October 7, 2024

Justice Court Of The Town Of Greenburgh, Westchester County

Orden, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected in part through October 10, 2024; it will not be published in the printed Offical Reports.

Decided on October 7, 2024
Justice Court of the Town of Greenburgh, Westchester County

Apple Bank, Petitioner/Landlord,

against
Contemporary Dental Implants Scarsdale LLP, Respondents/Tenants.

Docket No. 24060523

Kenneth Finger, Esq. 
Attorney for Respondent-Tenant
158 Grand Street
White Plains, NY 10601
kenneth@fingerandfinger.com
Shari S. Laskowitz, Esq.
Attorney for Petitioner-Landlord
Tarter, Krinsky & Drogin LLP
130 Broadway
New York, New York 10018
slaskowitz@tarterkrinsky.com

Bonnie Orden, J.

PROCEDURAL BACKGROUND
On April 24, 2024, petitioner commenced a commercial holdover proceeding against respondent under docket number 24040589 by filing a notice of petition, petition, and exhibits with the Court. In response, respondent filed a pre-answer motion to dismiss on June 11, 2024. On June 14, 2023, petitioner filed an affirmation in opposition and a cross-motion to amend, which included an amended complaint. On June 20, 2024, petitioner filed a new petition under the instant docket number, substantially the same as the proposed amended complaint, with accompanying affidavits of service, requisite notices, and exhibits. On July 3, 2024, the Court adopted the new petition as the active petition, replacing the preexisting petition, and dismissing docket number 24040589.[FN1]
By letter dated July 3, 2024, the Court offered respondent the opportunity to apply its motion to dismiss to the instant petition. Respondent chose, instead, to file a new pre-answer motion to dismiss the instant petition on July 29, 2024. On August 6, 2024, petitioner filed a notice of discontinuance of the initial petition.
In consideration of the instant motion to dismiss, pursuant to CPLR § 2219, this Court has considered: the original notice of petition, petition, affidavit of service, and exhibits under docket number 24040589; respondent's June 11, 2024 motion to dismiss; petitioner's June 20, 2024 petition - under the instant docket number; respondent's July 29, 2024 motion to dismiss; [*2]petitioner's affirmation in opposition with exhibits, and respondent's affirmation in reply with exhibits.

THE COURT DID NOT ERR IN ACCEPTING THE
NEW PETITION AS A SUPERSEDING PETITION
As a preliminary matter, on docket number 24040589, after petitioner filed its cross-motion, respondent filed a reply on June 24, 2024. Respondent articulated the following concerning petitioner's cross-motion and the filing of a new petition:
" . . . [T]he Cross Motion and supporting papers reveal that at this time there are now multiple proceedings pending, rendering the instant proceeding defective. Exhibit 6 to the Cross Motion sets forth and annexed to the Cross Motion another proceeding, a Petition returnable 'June____2024' relative to a Petition of Apple Bank verified June 13, 2024. Thus, there are apparently 2 proceedings pending. The Respondent is in a quandary — is the prior Notice of Petition and Petition withdrawn?; is the prior Notice of Petition and Petition supplanted by the new Petition? Are there now 2 proceedings pending? Is there one proceeding pending and if so, which one? It is quite confusing and certainly renders, at a minimum, the within proceeding and Petition defective and the motion should be granted and the Cross Motion denied" (reply affirmation of Kenneth Finger at ¶ 18).
No legal argument was proffered, and no caselaw or statute was cited. To eradicate the confusion and so that the court could proceed with a decision on the merits, the court issued a chamber's letter on July 3, 2024, (court exhibit 1), which the court permitted the respondent to consider a "letter order" for appellate purposes. In the chamber's letter, the Court accepted the new petition as a superseding petition. It permitted the respondent to either write a new motion or apply its pending motion to the new petition. After a conference with the Court and the parties, respondent chose to file an entirely new set of motion papers.
Respondent now claims that this Court erred in replacing the April 24, 2024 petition with the instant petition. This claim is without merit. Service of a new petition during the pendency of a pre-answer motion to dismiss is permitted as of right (see Schwatka v Super Millwork, Inc., 33 Misc 3d 1213[A] [Sup Ct, Suffolk County 2011], affd 106 AD3d 897 [2d Dept 2013] [explaining that CPLR 3211(a) extends the respondent's time to file an answer until after the motion is decided, thereby also extending the time for the petitioner to file one amended complaint, as of right, before the answer, per CPLR 3025]; see also Perez v Wegman Cos, 162 AD2d 959 [4th Dept 1990]). It is immaterial whether a petitioner is granted leave to file a new petition from the court, since a petitioner is permitted to file an amended complaint as of right. Therefore, a new petition should be considered a superseding petition, and pending motions can be dismissed as moot (see e.g. Lipary v Posner, 96 Misc 2d 578 [Sup Ct, Monroe County 1978]).
However, in the Second Department, "a motion to dismiss which is addressed to the merits may not be defeated by an amended pleading" (Livadiotakis v Tzitzikalakis, 302 AD2d 369, 370 [2d Dept 2003]). In such a case, "the moving party has the option to decide whether its motion should be applied to the new pleadings" (Sage Realty Corp v Proskauer Rose, 251 AD2d 35 [1st Dept 1998] [revd on other grounds]). As such, the Court was correct to accept the new petition as a superseding petition, and the respondent was accordingly provided an opportunity to either apply its motion to the new proceeding or file a new motion to dismiss. Respondent chose the latter. Respondent's motion to dismiss on the grounds that the Court committed reversible error in accepting the superseding petition is hereby denied.

THE NOTICE OF TERMINATION IS SUFFICIENT
Next, respondent's claim that the notice of termination was insufficient is unpersuasive. [*3]The phrase "under monthly hiring" may be a bit anachronistic, but it has a clear meaning: it is a month-to-month tenancy (see e.g., Katzman v City of New York, 183 Misc 2d 501 [App Term 1st Dept 1999]). Any confusion about that term is cured by the notice heading: THIRTY (30) DAY NOTICE OF TERMINATION OF MONTH-TO-MONTH TENANCY. Second, the notice does not need to state the grounds of termination when the notice is a notice of termination of a month-to-month lease (see RPL § 232-b).

A HEARING IS NEEDED TO DETERMINE WHETHER
A NEW TENANCY WAS CREATED
Respondent further moves to dismiss the petition on the grounds that petitioner accepted rent for April 2024 after the expiration of the thirty-day notice and that petitioner failed to timely refund the rent for April. Based on the motion papers and affidavits presented, the Court can approximate the following timeline:
On February 21, 2024, and February 29, 2024, petitioner (and through its exhibits and affidavits of service) asserts to have served respondent with a thirty-day termination notice, effective March 31, 2024. In early March 2024, respondent provided petitioner with checks covering rent for both March and April. The respondent admits paying two months' rent in advance as was its practice. While respondent contends that the checks were for two months' rent, petitioner asserts that one of the checks covered rent for March 2024 plus an additional $283.25 to be applied to April rent (affirmation in opposition of Shari Laskowitz, ¶ 16), had the lease not terminated. According to the petitioner, the entire sum of $5,800, for April's rent, in a separate check, was returned to the respondent in late March, after multiple prior attempts to do so earlier in the month.
However, the respondent claims that at some point in April, the petitioner "negotiated" or deposited the check (affidavit of Dale Goldschlag, ¶ 12). This is potentially corroborated by a printout attached to the respondent's motion, which suggests that the payment was issued through an electronic payment system on or about March 3, 2024 (respondent's affirmation in opposition, Ex. G). Notably, however, the document also includes the notation "Void Payment" at the top, which requires clarification at a hearing. The Court must determine whether this document reflects an option to void the payment or if it is evidence that the payment was indeed voided on that date. Additionally, the respondent has provided a printout of the check showing a date that differs from the one in the payment system printout. Thus, there are material factual issues regarding when and whether the check was sent, returned, and/or deposited.
The respondent's assertion that "it is 'Hornbook' law . . . that acceptance of rent for the period after the effective date of termination pursuant to the termination notice . . . will void the termination notice and give rise to a new month-to-month tenancy" is incorrect. The landlord-tenant relationship is established by contract, either express or implied, and cannot be implied where the actions and conduct of the parties negative (sic) its existence" (Scarborough Manor Owners Corp. v Robson, 57 Misc 3d 24, 28 [App Term, 2d Dept 2017], quoting Stern v Equitable Trust Co of NY, 238 NY 267, 269 [1924]).
The critical issue here is whether there was a "knowing acceptance of rent" after the termination date but before the action commenced, creating a legitimate expectation that respondent's rent payment could establish a new month-to-month tenancy (see Scarborough Manor Owners Corp. at 26). As held in Matter of Georgetown Unsold Shares, LLC v Ledet (130 AD3d 99, 105 [2d Dept 2015]), "a landlord's acceptance of unsolicited rent after the expiration of a lease does not, standing alone, amount to a voluntary relinquishment of the right to contest a tenant's possession." Waiver, by definition, requires the intentional relinquishment of a known [*4]right, and it cannot be inferred from negligence, oversight, or thoughtlessness. Thus, the court in Georgetown concluded that accepting rent, under the facts of that case, did not provide "unequivocal evidence of the landlord's intent to waive the right to proceed against a tenant" (id).[FN2]
Georgetown's holding was reaffirmed in Matter of State of New York v Ted B. (132 AD3d 28 [2d Dept 2015]), as noted in 113-115 N. 5th Ave. Holding Corp. v Costa, 58 Misc 3d 576 [Mount Vernon City Court 2017]), wherein the Mount Vernon Court held that the landlord's receipt of three unsolicited checks did not void the notice of termination even where the landlord did not return the rent payments. Quoting from Ted B., the Mount Vernon City Court reiterated that " '[t]he essence of a waiver is the intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it . . . . '[K]nowledge and intent are essential elements and the waiver 'must be clear, unmistakable and without ambiguity' (113-115 N. 5th Ave. Holding Corp at 579 [internal citations omitted]).
While respondent cites 92 Bergenbrooklyn, LLC v Cisarano, 50 Misc 3d 21 (2d Dept 2015) in support of its motion, that decision addresses a narrow topic not applicable to the case at bar, namely, whether a landlord's intentional acceptance of a rent payment after the filing of a summary proceeding, but before service of papers, results in a new tenancy. In Bergenbrooklyn, there was no question that the acceptance was intentional. In the case bar, the parties' intent to tender or accept rent is the very crux of the issue.
Here, it is undisputed that respondent tendered more than one month's rent in early March, after being served with the thirty-day notice but before the March 31, 2024 termination date. If respondent is correct that the April check, submitted in early March, was not deposited until April - after the termination date - this could create a reasonable expectation that the deposit would give rise to a new month-to-month tenancy, thus nullifying the termination notice, depending on the intent of the parties, to be established after a fact-finding hearing.
Since respondent has raised a triable issue of fact regarding whether landlord accepted rent during the "window period" - the time between the termination of the tenancy and the commencement of the proceeding - or whether there was an inadvertent acceptance of rent which was expeditiously refunded to tenant, are material factual issues that need to be resolved. These issues pertain to the potential creation of a new month-to-month tenancy for April 2024. Therefore, a hearing is required, pursuant to Scarborough Manor, to determine whether the facts and the parties' intent support the conclusion that such a tenancy was established.

A TRAVERSE HEARING IS ORDERED
Respondent claims that service of both the thirty-day notice and the petition were defective. To that end, respondent writes that service of process pursuant to CPLR 310 is the only mechanism by which service can be proper. The respondent is incorrect in this assertion and relies on an inapplicable rule. CPLR 310 pertains only to partnerships, not limited liability partnerships. Respondent is a limited liability partnership. CPLR 310-a delineates the mechanisms for service on a limited liability partnership. Therefore, the Court must look to CPLR 310-a to determine whether service was proper. CPLR 310-a permits service pursuant to Section 121-1505 of the NY Partnership Law, inter alia (CPLR 310-a[c]). The relevant section of the NY Partnership Law provides that "[n]othing in this section shall affect the right to serve [*5]process in any other manner permitted by law" (NY CLS Partn §121-1505[c]). Therefore, service pursuant to RPAPL 735 is permissible in summary proceedings against limited liability partnerships, since it is another "manner permitted by law" (id.; see also 50 Court St. Assoc. v Mendelson and Mendelson, 151 Misc 2d 87 [Civ Ct, Kings County 1991]).
Here, the affidavits of service allege appropriate service pursuant to RPAPL 735(1). The notice of petition, petition, and exhibits were left with a person of suitable age and discretion at the premises, and additional copies were mailed to respondent by both registered and regular mail within one day (see affidavit of Michael Keating, dated June 20, 2024). The affidavit of service also claims that the thirty-day notice was left with a person of suitable age and discretion at the premises, and additional copies were mailed to respondent by both registered and regular mail within one day, and that service was also affected by so-called "nail and mail" service (see respectively affidavit of Michael Keating, dated February 22, 2024, and affidavit of Michael Keating, dated March 1, 2024).
However, while the affidavits appear sufficient on their face, respondent has raised a material issue of fact with respect to service that requires a hearing. Respondent alleges that Peter Munca, the individual named in the February 22 affidavit of service as having received service, was not employed by the respondent at the time the thirty-day notice was allegedly served. If respondent's allegations are accurate, it could raise doubts about the reliability of all the affidavits of service in this proceeding. It is therefore necessary to have a hearing to determine whether Peter Munca was present at the premises on February 21, 2024 (the day he allegedly received service), and, if he was not, how the process server came to believe that Peter Munca was present.
It is therefore
DECIDED and ORDERED that a hearing be conducted to determine whether a new month-to-month tenancy was created in April 2024; and it is
DECIDED and ORDERED that a Traverse hearing be conducted with respect to the thirty-day notice; and it is hereby
ADJUDGED and DECIDED that respondent's motion to dismiss the petition on its remaining contentions are denied.
The foregoing constitutes the DECISION and ORDER of this Court.
The clerk is respectfully directed to enter and distribute this decision and order to counsel for petitioner and respondent and schedule a hearing date forthwith.
Dated: October 7, 2024
Hon. Bonnie Orden
Greenburgh Town Court

Footnotes

Footnote 1:Court Exhibit 1

Footnote 2:The Appellate Division, Second Department specifically noted that to the extent that the Appellate Division, First Department, reached a contrary result, most notably in the leading case of 205 E. 78th. Assocs. v Cassidy (192 AD2d 479 [1993]), it declined to follow that ruling or its rationale (Matter of Georgetown at 105-106).